## Alfred Keyser v. Smith Sutherland.

*United States Survey—Law governing same—Settled policy to subdivide into square figures—Quantity must generally give way to fixed lines and monuments—Trespass to land—Trying title therein—How put in issue—Judgment in, never a bar to subsequent ejectment suit between same parties for same premises.*

| | |
|---|---|
| 59 | 455 |
| 62 | 383 |
| 63 | 387 |
| 64 | 476 |
| 65 | 51 |
| 70 | 530 |
| 59 | 455 |
| 86 | 55 |
| 59 | 455 |
| 102 | 232 |
| 59 | 455 |
| 104 | 118 |
| 104 | 645 |
| 59 | 455 |
| s26NW | 865 |
| j190US | 489 |
| 59 | 455 |
| 137 ⁵ | 47 |

1. The surveyor-general had no authority under the acts of Congress of February 11, 1805, and April 24, 1820—revised statutes of U. S. §§ 2396, 2397—to extend a south fraction north of the east and west quarter line of the section, and to do so, was a violation of law, and contrary to the duties of his office, hence a void act.

2. Quarter lines are not run upon the ground, but they exist by law, the same as section lines.   When the township and section lines are run, and the corners marked according to law, the quarter-section lines are ascertained, on the plat, by protracting lines across the section north and south and east and west from the opposite quarter section posts, set in the exterior lines of the section by the government surveyor, and smaller sub-divisions are protracted so as to make one-half and one-fourth of a quarter section.   The *settled* policy of the law, has been, to survey the public lands and sub-divide them, as far as possible, into *square* figures, running the lines north and south and east and west.

3. In general, quantity in a description must give way to fixed lines and monuments: *Moran v. Lezotte*, 54 Mich. 88, and cases cited.

4. In an action of ejectment, the defendant sought to defend under an adverse possession of the premises in dispute, for the statutory period, and to meet this defense, the plaintiff introduced in evidence the record in a trespass suit, involving the same land, wherein he recovered judgment against the defendant, in which the presiding judge certified "that the title to the land described in the declaration did not come in question."
   *Held*, that this was a finding which the court was empowered to make and must be taken as conclusive, in the absence of any showing upon the record to the contrary, and that said judgment could not be considered as *res adjudicata* in the ejectment suit.

5. Under the general issue, the defendant in the trespass suit could only contest the *fact* of the trespass, the narrow issue thus made excluding any assertion or trial of ownership of the land, and for the purposes of that trial, he conceded the title to be in the plaintiff.

6. A judgment in a suit for trespass to lands, cannot, under any circumstances, be a bar to a subsequent ejectment suit for the same premises, even though the parties in both suits are the same.

Error to Kalamazoo. (Mills, J.)    Argued November 19, 1885.    Decided February 3, 1886.

Ejectment.    Defendant brings error.    Reversed.

The facts are stated in the opinion.

*Breese & Stearns,* for appellant:

The construction of the United States surveys and plats, and of what a patent or deed conveys, are questions of law to be determined by the court: Broom & Hadley's Com. 725, note 354; Wharton's Law of Contracts, § 647 and references; and the court erred in submitting that matter to the jury, but should have charged them as to which of the patents, offered in this case, embraced the land in suit.

The judgment in the trespass case, was no bar to the defense offered of adverse possession in defendant. The weight of authority is opposed to the doctrine that such a judgment is conclusive under any circumstances, as to title to land in a subsequent ejectment suit between the same parties: Freeman on Judgments, § 311; *Arnold v. Arnold,* 17 Pick. 4; *Morse v. Marshall,* 97 Mass. 519; *Hargus v. Goodman,* 12 Ind. 629; *Parker v. Hotchkiss,* 25 Conn. 321; 1 Hilliard on Torts, 498. New York is the only state holding otherwise, and there, its effect is limited to the part or portion of land on which the trespass was *actually* committed, and it devolves upon the party seeking to establish the estoppel, to show, that the question of title was determined as to the identical land sought to be recovered: *Dunckel v. Wiles,* 11 N. Y. 420. But we contend for a broader doctrine and insist that the contrary decisions are more in harmony with the law of this State. The action of trespass, in this State, is a possessory one merely, and a plea of the general issue denies plaintiff's title, and puts in issue his right to possession, and a judgment, rendered, only determines the right of possession: *Rawson v. Finlay,* 27 Mich. 268. The trial of title to land is considered of a higher order than that of personal property, and in actions of ejectment, the right to a second trial before depriving one of such a valuable right, is recognized and provided for by statute: How. Stat. § 7822. But, aside from this, the judgment in the trespass case was,

expressly, that the question of title did not arise on the trial of the case.

*Hampden Kelsey*, for plaintiff:

The same questions involved in the present case, had been before adjudicated in the trespass case, wherein the same premises were in dispute, and the same defence was made, and the second trial only brought in controversy the same questions which had once been litigated and settled.

In the action of trespass, the question of title came directly in issue. The declaration claimed title, in fee, to the land described therein, which was the same as described in the declaration in ejectment, and the plea to the declaration in trespass was the general issue. The verdict and judgment in the trespass suit, followed the declaration, and the offers of them were material, to show a former adjudication.

The adjudication in the trespass suit was a bar to the present suit in ejectment: Sedgwick on trial of title to lands, 582; *Shumway v. Shumway*, 42 N. Y. 143; Wells, on res adjudicata, 245. The facts in the case were left to the jury, and it was left to them to say where the boundaries were, which was proper; all bounds and starting points are questions for the jury: *Stewart v. Carleton*, 31 Mich. 273; *Cronin v. Gore*, 38 Mich. 386.

MORSE, J. This is an action of ejectment, to recover a piece of land which lies on the west side of the S. W. ¼ of the N. W. ¼ of section 29, in town 2 S., of range 11 W. Said piece of land is bounded on the west, by the section line which runs on the east of section 30, and on the east, by what is claimed to be the west line of an Indian reserve.

The plaintiff holds the title, without dispute, of the said S. W. ¼ of the N. W. ¼ of section 29, as patented from the government, and claims that this strip of land is contained within that description.

The defendant claims his title under a patent from the United States, issued to one Barnard, September 10, 1838, which patent granted the " south fraction of section 29, according to the official plat of the survey of lands returned to the surveyor general." He also asserts title, by adverse possession, under color of a deed from one John Payne, dated

February 27, 1850, and describing land as follows: "All of the following piece or parcel of land, situated in Kalamazoo, in Kalamazoo county, Michigan, and designated as all that part or portion of the south fraction of section 29, which joins the E. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ and the S. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section 30, of township 2 S., of range 11 W. He claims that under said deed he has occupied this strip of land, and inclosed the same by a fence or fences, for over twenty years continuously. This deed, from Payne, was not shown to be connected with any conveyance from the United States.

It appears from the evidence that the first government survey of this township was in November, 1825, when John Mullett, United States deputy surveyor, commenced the survey of what was known as the Matchebenashewish Indian reservation, setting a post for the north-east corner of such reserve near Goselah's house, on the twenty-seventh of the month, and surveying the north and east boundaries of the reservation. On the twenty-eighth he surveyed the south boundary of the township 2 S., of 11 W. On the twenty-ninth he surveyed the east boundary of same town, and the west boundary on the thirtieth. On the thirty-first he surveyed the west and south boundaries of the reserve, and December 23, 1826, he surveyed the north boundary of the township.

Between January 8 and 17, 1827, the same officer subdivided the territory, outside of the reservation, into sections and fractions, establishing corners, etc. The Indian reserve was regarded in every instance, and all lines stop at the boundary thereof, and fractional pieces were formed, with given areas, entirely surrounding said reserve.

Between June 16 and 22, 1829, the reservation was subdivided into sections, and fractions, by Orange Risdon, deputy United States surveyor, and the lands therein contained restored to, or put into market by the government.

If the Barnard patent, under which defendant claims, embraces within its description this strip of land, it ends this controversy, and the verdict below should have been directed, as counsel for appellant claims, for the defendant.

Upon a careful examination of the government plat of the township, in which this Indian reservation was contained, the field-notes of the surveyors, and the authorities bearing upon the subject, we conclude that, as a matter of law from the uncontroverted facts, this patent issued by the United States to Barnard, and purporting to convey the "lot or south fraction of section 29," in said township, does not include this strip of land in dispute here. It is true that the Barnard patent was issued before the one to O'Brien, under which plaintiff claims, the O'Brien patent being dated May 1, 1839; but the latter description calls for a full subdivision, to wit, the S. W. ¼ of the N. W. ¼ of section 29, township 2 S. of range 11 W., containing forty acres of land, according to the official plat of the survey of said lands returned to the general land-office by the surveyor general; and, under the authorities, the date of the issuing of the patent cuts no figure in the case. By a reference to the following diagram, it will

be seen that the land in controversy between these parties, marked "A," lies entirely north of the quarter line running east and west through said section 29, and is therefore upon the N. ½ of said section.

The south fraction of said section 29, as claimed by defendant, is the narrow strip, marked " B," running the whole distance between the north and west lines of sections 32 and 29 and the south and west lines of the Indian reservation, and being a part of section 29. The " south fraction," then, as claimed, is a narrow strip running along and adjoining the south and west side of the Indian reserve, from the northeast corner of section 32 to the northeast corner of section 30.

The *south* fraction cannot be construed, in our opinion, as continuing any further north than the east and west quarter line of the section. This strip. in dispute, being north of the quarter line, cannot be a part of a south fraction of the section. These surveys of this township and the reservation, and the subdivisions of the same, were made under the acts of Congress of February 11, 1805, and of April 24, 1820. Under these statutes the surveyor general had no authority to extend a south fraction north of the east and west quarter line of the section. If he did so, it was a violation of law, and contrary to the duties of his office, and therefore a void act: *Brown's Lessee v. Clements*, 3 How. 650, 665; *Miller v. Kerr*, 7 Wheat. 1.

If the intention was to close the west line of section 29 on the west line of the Indian reserve, then this strip of land, running along the west side thereof, should have been divided by the quarter line into two fractions, and designated, one as the southwest fraction, and the other as the northwest fraction, under the law: *Brown's Lessee v. Clements*, 3 How. 664; *Wilson v. Hoffman*, 54 Mich. 246.

The quarter lines are not run upon the ground, but they exist, by law, the same as the section lines. When the township and section lines are run, and the corners marked according to law, the quarter-section lines are ascertained on the

plat by protracting lines across the section north and south and east and west from the opposite quarter-section posts, set in the exterior .lines of the section by the government surveyor, and smaller subdivisions are protracted, so as to make one-half and one-fourth of a quarter section.    The settled policy of the law has been to survey the public lands and subdivide them, as far as possible, into square figures, running the lines north and south and east and west.    By the portion of the township outside of the reservation being subdivided first, it was found that the north section line of 32 did not come up to the south line of the reserve, and a fraction was therefore surveyed and its area estimated.

When the reserve was subdivided this left section 29, as platted, a fractional section, containing less than 640 acres; but by extending or protracting the east and west section and quarter lines to the corresponding section corners and quarter posts, it naturally left full subdivisions in the north half of said section, and they are described as such.    It is claimed, however, that the west line of 29 stops on the west reserve line.    An examination of the field-notes, subdividing the reservation, shows that the surveyor, in every instance, closed on the section corners instead of the reserve.    In running the line west, between sections 20 and 29, he closed on the northeast corner post of 30, and on the plat marks the distance from the northeast corner of 29, to that post, as 80 chains and 10 links, and as the length on the north line of 29.    There is no indication upon the plat showing the northwest quarter of 29 not to be a full subdivision.    Its area, or any part of it, was not estimated and marked, while upon the south of 29 the fractional divisions are shown, with their area.    The O'Brien patent, under which plaintiff claims, calls not only for the one-fourth part of a returned subdivision, but for forty acres of land, in so many words.    Under the statute, "each section or subdivision of section, the contents whereof shall have been returned by the surveyor general, shall be held and considered as containing the exact quantity expressed in such return, and the half sections and quarter sections, the

·contents whereof shall not have been thus returned, shall be held and .considered as containing the one-half or the one-fourth part, respectively, of the returned contents of the section of which they make part."

It seems, then, that the patent covers this strip of land, without question: *Wilson v. Hoffman*, 54 Mich. 248; *Brown's Lessee v. Clements*, 3 How. 665.

It is argued by the defendant, that, as the evidence shows that the area of the south fraction is marked upon the official plat at 39.08 acres, and as this amount of land can only be found by adding the area of this southern and the western ·strip together, that the whole strip, from the north line of section 29 to the east line on the south, was included in the survey of the south fraction, and intended to be and was ·sold, as such, under the Barnard patent. But this cannot control. In general, quantity in a description must give way to fixed lines and monuments: *Moran v. Lezotte*, 54 Mich. 88, and cases cited. And in this case, as already shown, if so surveyed and offered for sale, it would be void under the law, .as a violation of the statute under which the survey was made. In the case of *Brown's Lessee v. Clements*, in the .Supreme Court of the United States, heretofore cited, a patent had been issued for a fraction named as the "southeast subdivision of 22." In the surveyor general's office, the southwest quarter of the section, and portions of the N. W., N. E., and S. E. quarters, being all of the section ·outside of an Indian reserve, had been divided, by a line running north and south and west of the quarter line, into two parcels, one of which was patented as the southwest quarter of 22, and containing 92.67 acres, and the other as southeast fraction 22, and containing 110.50 acres. In a contest between the two patentees, it was decided that the patentee to the southeast subdivision, or fraction, could hold no land west of the quarter line, as the surveyor general ·could not thus divide it, as heretofore shown ; and that the plat, thus made, being illegal, the number of acres expressed in the patent, referring to said plat, could not conclude either patentee, and cut no figure in reaching a conclusion as to what the patent covered by law : See page 665.

Upon the trial of this cause evidence was offered, and at first submitted to the jury, tending to show that the defendant, under the Payne deed, had maintained a sufficient adverse possession of this strip of land to entitle him to a verdict in his favor. But, before the termination of the cause, the court, against the objection of the defendant, and upon plaintiffs motion, withdrew this evidence from the jury, and instructed them, in substance, that they were concerned only with the question as to whether this disputed territory was embraced in the Barnard or O'Brien patent. If in the Barnard patent, they must find for defendant. If in the O'Brien patent, for the plaintiff. The result was a verdict for plaintiff.

The basis of this ruling of the circuit judge was a trespass suit between the same parties. The record shows that Keyser commenced, in justice's court, in 1882, a suit for trespass against Sutherland, claiming in his declaration that the same was committed on the S. W. ¼ of N. W. ¼ of said section 29, which was plaintiff's close. Defendant pleaded the general issue, and gave notice, in the opinion of said defendant, that the question of title would arise on the trial. Thereupon it was certified, under the statute, to the circuit court of Kalamazoo, where it was tried, and judgment rendered for defendant. Judgment was afterwards reversed in this Court and a new trial granted. In November, 1883, the plaintiff amended his declaration, describing the premises upon which the alleged trespass was committed as situated on said section 29, and

"commencing at the northeast corner of the southwest quarter of the northwest quarter of said section twenty-nine; running thence west on the line between the northwest quarter of the northwest quarter of section twenty-nine and the southwest quarter of the northwest quarter of section twenty-nine to the section line between sections twenty-nine and thirty; thence south, along said section line, to where the quarter line of said section twenty-nine, which runs between said southwest quarter of the northwest quarter of section twenty-nine and the southwest quarter of said section twenty-nine crosses said section line; thence east, along said quarter line, to the southeast corner of said southwest quar-

ter of the northwest quarter of section 29; thence north to
the place of beginning; said above described premises being
known as the southwest quarter of the northwest quarter of
section twenty-nine, town two south, of range eleven west,
in said county of Kalamazoo, and in the township of Kala-
mazoo, in said State."

—it being intended by this description to cover the land now
in dispute, and alleging his ownership in fee of the same.
No contest was made as to the filing of amended pleadings.
The defendant pleaded the general issue only. The cause
was then tried before a jury, and verdict and judgment ren-
dered for the plaintiff. The following is a copy of the judg-
ment entered:

"In this cause the jury by whom the issue was tried hav-
ing rendered a verdict in favor of the plaintiff, and against
the defendant, and having assessed the damages of the said
plaintiff, over and above his costs and charges by him in his
suit in this behalf expended, at the sum of two dollars,
thereupon it is considered that the said plaintiff do recover
against the said defendant his damages aforesaid, together
with his costs and charges aforesaid, to be taxed, and that
said plaintiff have execution therefor; and it is further con-
sidered and adjudged that, in the trial of this case, the *title
to the land described in the declaration of the said plaintiff
did not come in question.*"

The circuit judge was of the opinion, and so ruled, in the
present case, that this judgment, from which no appeal was
taken, was *res adjudicata*, and a bar to any claim of title by
the defendant to the premises in question, here, under the
alleged adverse possession by color of the Payne deed. De-
fendant, acquiring title under the Barnard patent after the
entry of this judgment, was restricted in his claim of title to
that claim. This is alleged as error.

For the purposes of the trespass suit, it seems that the
plaintiff's title to the premises was admitted. At any rate,
the circuit judge certifies in the judgment, as he was author-
ized to do under the statute, that the question of title did
not come in issue, and was not litigated therein. This entry
and determination was for the purpose of settling a question
of costs, no doubt, but, nevertheless, it was a finding which

the court was empowered to make, and must be taken as conclusive, in the absence of any showing upon the record to the contrary.

This judgment, under these circumstances, and by the issue presented on the trial in the circuit court, which did not include the question of title to these premises, cannot be considered as *res adjudicata* in this suit. The ownership of this strip of land was not litigated. The fact that it was admitted to be in plaintiff, for the purposes of that suit, cannot be used as a bar to defendant's claim of title by adverse possession in the case before us. The real subject-matter of the trespass suit was, as plainly appears from the pleadings and the judgment entry, whether a manual trespass was committed upon the premises, and not who owned the land. The defendant, Sutherland, cannot be precluded in this action from contesting the title to this piece of land because he saw fit not to do so in the trespass suit.

Pleading the general issue, without putting the title in issue, in the trespass case, the defendant in that action could only contest the fact of trespass. The narrow issue thus made excluded any assertion or trial of ownership of the premises, and, for the purposes of that trial, conceded the title to be in Keyser: *Peoria, etc., Ins. Co. v. Perkins*, 16 Mich. 380, 384; *Jacobson v. Miller*, 41 Mich. 90, 98, 99.

But we can go further. A judgment in trespass cannot, in our opinion, under any circumstances, be a bar to a subsequent ejectment suit for the same premises, even though the parties in both suits are the same.

If the contrary doctrine was supported by the common law, it would not be in harmony with the laws of this State, but inconsistent with our statutes, in relation to the actions of ejectment and trespass.

A party is entitled to but one trial, as a matter of right, in this State, in an action of trespass, while in ejectment, upon payment of costs of the first trial, he has an absolute right to another trial, of which no court can debar him. How. Stat. § 7822; *Dennison v. Genesee Circuit Judge*, 37 Mich. 285. A single judgment in ejectment is not neces-

sarily final for any purpose: *Rice v. Auditor General*, 30 Mich. 13.

A judgment in trespass, on the contrary, is final, unless set aside by the trial court, or reversed by an appellate one. If a judgment in trespass, therefore, was permitted to be a bar to a subsequent action of ejectment by the same parties, and involving the title to the same premises, the statutory right of new trial, granted in ejectment, could easily be nullified. The plaintiff, at liberty to choose his form of action, would bring trespass, and settle his title in one trial. Under the decisions in the State of New York, holding a judgment in trespass *quare clausum* a bar to an action of ejectment, we find it quite "common for a party, claiming the title to land, and the right of possession, and who desires to avoid the delays consequent upon the statutory right to new trials in an action of ejectment; to bring his action in trespass, and so establish his right to the title and possession upon a single trial": *Shumway v. Shumway*, 42 N. Y. 145.

We do not feel justified in thus rendering the right, granted by the law-making power, to a new trial in ejectment abortive and ineffective, as has been done in our sister state. We should hesitate thus to annul this statute, even if the well-settled rule of the common law authorized the bar contended for in this case.

But at common law, a judgment in trespass *quare clausum fregit* was never a bar to an action of ejectment. Neither was a judgment in ejectment a bar to one or more successive actions in ejectment, between the same parties, for the same premises. And a judgment in ejectment, in this State, is only made final and conclusive, as to the title litigated in it, between the parties to the action and their privies, by the statute, which, by its exceptions, grants the right to more than one trial: How. Stat. §§ 7821, 7822, 7823.

Outside of the state of New York, and some states where it is made a matter of statutory regulation, it is generally held that a judgment in trespass *quare clausum*, is not a bar to a subsequent action of ejectment: *Morse v. Marshall*, 97 Mass. 519, 523; *Hargus v. Goodman*, 12 Ind. 629; *Parker*

*v. Hotchkiss*, 25 Conn. 321; *Chandler v. Walker*, 21 N. H.
286; *Sabins v. McGhee*, 36 Penn. St. 453.

This view is, as we believe, in accordance with the principle, and the most consistent with our statute in relation to the action of ejectment.

For the error in instructing the jury otherwise, and shutting out from their consideration the defendant's claim of adverse title, the judgment of the court below is reversed, with costs of this Court, and a new trial ordered.

The other Justices concurred.