471 P.2d 148

**BARBIZON OF UTAH, INC., Plaintiff and Appellant,**

v.

**GENERAL OIL COMPANY et al., Defendants and Respondents.**

No. 11364.

Supreme Court of Utah.

June 9, 1970.

Cullen Y. Christensen, Provo, Ray, Quinney & Nebeker, Albert R. Bowen, Salt Lake City, for appellant.

Leon M. Frazier, Provo, for respondents.

**322**

CALLISTER, Justice.

This action involves a boundary dispute between the fee holders of adjoining parcels of land situated in Provo, Utah. Each party initiated a quiet title action against the other, and the two cases were consolidated for trial. The trial court rendered judgment for the defendant, General Oil Company, and subsequently denied plaintiff's motion to amend the judgment or to grant a new trial. Plaintiff, Barbizon of Utah, Inc., has appealed on the ground that there is insufficient evidence to support the judgment.

The abstracts of title of both parties are in evidence. The root title of both parcels was a patent from the United States of America to James Smith, wherein he was granted the southeast quarter of Section 36 in Township 6 South of Range 2 East "according to the official plat of the survey of said lands, returned to the General Land Office by the Surveyor General."

Subsequently, Smith conveyed a parcel of land to one Baum, General Oil's predecessor in interest, and a parcel to one Bean, Barbizon's predecessor in interest. These two parcels were contiguous, sharing a common east-west boundary; the descriptions did not overlap. Both conveyances had as a starting point in their descriptions the northwest corner of the southeast quarter of Section 36, the center of the section. After Baum's death, the administrator of his estate sliced Baum's original parcel of approximately 11.9 acres into two parcels. The administrator continued to use the center of the section as a starting point in the description of the one parcel. The administrator in his conveyance of the second parcel converted the description from the center of the section to a tie with the southeast corner of the quarter section and its relationship to the east boundary of the right of way of the Heber Branch of the Denver and Rio Grande Railroad. It is this second deed that is in defendant's chain of title. Plaintiff's chain of title is based on a description tied to the center of the section. (Plaintiff's immediate grantor did not convey by a description tied with the center of the section, but plaintiff received quitclaim deeds from its immediate grantor's predecessors in interest with the tie to the center section. Plaintiff also introduced into evidence the description upon which its taxes were assessed; the center section tie was contained therein.)

The description in defendant's chain of title which ties its boundaries to the southeast corner of Section 36 allegedly creates an overlap of approximately 61 feet of the property of the parties. Neither party relies on adverse possession or boundary by acquiescence to support its claim; each asserts its position is supported by the conveyance in its chain of title.

Defendant's entire argument is premised on the contention that the center of Section 36 was not determined until 1958 and that the conveyance from the Baum estate in 1923, which tied the boundaries of defendant's land to the southeast corner of the section and its relationship to the railroad right of way, constituted an earlier survey which takes precedence over the later survey. Defendant's assertion that the exact location of the center of Section 36 was unknown until 1958 is based on the testimony of Carson Greer, a licensed engineer and surveyor. Mr. Greer testified that over the years he had worked in Section 36, and, approximately in 1958, he had completed the perimeter. Through the location of the quarter corners, he was able to determine the center of the section.

The trial court found that the two afore-mentioned private surveys did not have any common points, that the survey which tied to the railroad was more accurate and substantial because it was tied to a fixed object, and that General Oil's survey was more reliable. The trial court granted judgment to General Oil, quieting title therein to the disputed strip of land along the common boundary of the parties.

There is no dispute as to the location of the railroad in relationship to the southeast corner of the section. The issue is where should the boundary line between the parties be located according to the record titles.

In Babcock v. Dangerfield[1] this court stated:

\* \* \* While it is true that in an action to quiet title the plaintiff must succeed by virtue of his own title rather than the weakness of defendant's title, nevertheless all the plaintiff need do is to prove prima facie that he has title which, if not overcome by defendant, is sufficient. \* \* \*

This court cited with approval a statement that it is only necessary for a plaintiff to go back to the patentee when he is relying exclusively upon a paper title and not on possession.

In Vaught v. McClymond[2] the basic legal precepts to resolve the instant dispute are clearly specified with appropriate citations of authority.

\* \* \* When lands are granted according to an official plat of a survey, the plat itself, with all its notes, lines, descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and controls so far as limits are concerned, as if such descriptive features were written out on the face of the deed or grant itself. \* \* \*

1. 98 Utah 10, 12–13, 94 P.2d 862, 863 (1939).

2. 116 Mont. 542, 155 P.2d 612, 616, 618, 620 (1945).

Congress has provided a system for the survey of public lands, and the boundaries and limits of the several sections and subdivisions thereof, including quarter sections, must be ascertained in conformity with the principles laid down in the federal statutes. See Sections 751, 752, 43 U.S.C.A.

\*    \*    \*    \*    \*    \*

"A survey of public lands does not *ascertain* boundaries; it *creates* them." Cox v. Hart, 260 U.S. 427, 43 S.Ct. 154, 157, 67 L.Ed. 332. "The quarter lines are not run upon the ground, but they exist, by law, the same as the section lines." Keyser v. Sutherland, 59 Mich. 455, 26 N.W. 865, 867. \*    \*    \*

\*    \*    \*    \*    \*    \*

To find the common corner of quarter sections or the legal center of a section of land, straight lines must be run from the quarter section corners on the boundary of the section to the opposite quarter corners, the point of intersection constituting the legal center, and the boundary line between two quarters cannot be legally established by measuring along one side of the section 160 rods, \*    \*    \*. Sec. 752, 43 U.S.C.A. \*    \*    \*.

\*    \*    \*    \*    \*    \*

"But the government surveys are, as a matter of law, *the best evidence*; and, if the boundaries of land are clearly established thereby, other evidence is superfluous and may be excluded; *the best evidence* is the corners actually fixed upon the ground by the government surveyor, in default of which the field notes and plats come next, unless satisfactory evidence is produced that the corner was actually located upon the ground at a point different from that stated in the field notes." [Citations omitted.]

"Any section corner or quarter corner that is identified as having been established by an official survey of the United States government must stand as being correctly located, however plain it may appear that the location is wrong; because the government surveys cannot be changed in an action at law between individuals." \*    \*    \*

In the instant action, the grant to James Smith, the patentee, was to the southeast quarter of Section 36 "according to the official plat of the survey of said lands, returned to the General Land Office by the Surveyor General." This plat itself with all of its notes, lines, descriptions and landmarks became a part of Smith's deed. The government survey created the boundaries of Smith's grant, and Smith's subsequent conveyances to Baum and Bean, the remote grantors of the parties in this instant action, must be in reference to and conformity with the boundaries created by the governmental survey. (There is no claim to any property in area greater than that conveyed in the Baum and Bean conveyances from Smith.) The location of the present

boundary line between General Oil and Barbizon cannot be ascertained without reference to the section corners and quarter corners as established by the survey incorporated in Smith's patent.

There is no evidence in the record that either the description in the administrator's deed from the Baum Estate to defendant's predecessor in interest to which the defendant has referred as an earlier survey, or the location of the center of the section as testified to by expert witness Greer, was based upon the plat or field notes of the government survey. Since there is no affirmative evidence to establish the location of the center of the section as it was created by the United States Government survey, and as the location of the common boundary of the parties can only be determined by its tie to the center of the section, the judgment of the trial court must be reversed.

We refer the parties to Vaught v. McClymond,[3] wherein the trial court had received in evidence certified copies of the official plat as well as the field notes of the government survey. The appellate court remanded the cause so that the parties might arrange a survey; the court admonished that in running the boundary line the government survey and official plat must control the action of any surveyor. It is noteworthy that in the instant record on page 117 of the Barbizon abstract there is an entry of a Section Corner and Corner Index, by the Utah County Surveyor, recorded March 9, 1966; contained therein are the distances of the corners and quarter corners of Section 36. If the plat cited in this entry were based on the government survey incorporated in the Smith patent, the parties could resolve their dispute accordingly.

This cause is reversed and remanded to the trial court for disposition in accordance with this opinion. Costs are awarded to appellant.

TUCKETT and ELLETT, JJ., concur.

HENRIOD, J., does not participate herein.

CROCKETT, Chief Justice (concurring specially).

It seems to me that where the parties and the court have confined their attention to the surveys, which appear to have brought about the conflict, each party believing that they were absolutely right; and the trial court has ruled one way and this court has ruled the other, that upon remand there should be an unconditional new trial and consideration of the issues. The parties and the trial court would thus be entirely free to seek any proper solution to the controversy that may be found under the evidence and the law applicable thereto, and not inconsistent with the instant decision.

---

3. Footnote 2, supra.