489 P.2d 1001

Theris CORNIA, Plaintiff and Respondent,

v.

Ezra PUTNAM, Defendant and Appellant.

No. 12383.

Supreme Court of Utah.

Oct. 15, 1971.

H. Don Sharp, Van Sciver, Florence, Hutchison & Sharp, Ogden, for defendant and appellant.

Charles P. Olson, Olson, Hoggan & Sorenson, Logan, for plaintiff and respondent.

CALLISTER, Chief Justice:

Plaintiff, alleging ownership of the southwest quarter of the southwest quarter of Section 22, T. 9 North, R. 6 East, Salt Lake Base and Meridian, initiated this action to compel defendant to remove a fence which he had erected allegedly upon plaintiff's land. Defendant responded by answer and counterclaim, asserting his ownership in the southeast quarter of the southwest quarter of Section 22 and contending that the controversy involved the location of the boundary line between the two parcels. Defendant prayed that the true and correct boundary line be decreed by the court.

Upon trial, this matter was heard by the Honorable Lewis Jones; the case was under advisement at the time of his unexpected demise. Counsel stipulated that the matter be decided upon the record by the Honorable Venoy Christoffersen, who ren-

dered judgment for the plaintiff. Defendant appeals.

The trial court found that each party had hired competent surveyors to run surveys to locate the southwest corner of Section 22; the sandstone monument, placed by the government surveyor at this point was missing. The defendant's surveyors, in re-establishing the location of the southwest corner of Section 22, relied upon the testimony of witnesses and the field notes of the original survey, regarding distances and courses to natural objects, such as, streams. Plaintiff's surveyors located the boundary line by proceeding by courses and distances from original government monuments still in place; one surveyor commenced from the southwest corner of Section 33; the other initiated his course from the southwest corner of Section 16. The trial court accepted plaintiff's survey as accurate, on the ground that it was based upon corners actually fixed upon the ground by a government surveyor. The court found that the fence constructed by defendant constituted a continuous trespass. The court held that the north-south boundary line between the two sixteenth sections in the southwest quarter of Section 22 was along the west boundary of Cornia Lane, a lane which runs in a north-south direction through the lowest third of the quarter section. (Cornia Lane terminates at its intersection with the Monte Cristo Road, which in the disputed area runs on an east-west course. Consequently, the boundary line as decreed by the court for the northern two thirds of the southwest quarter would be an approximate projection of the west boundary of Cornia Lane, north of the Monte Cristo Road.)

On appeal, defendant urges that the trial court erred by its admission of the testimony of witness Harry N. Carlton concerning the survey he conducted of the area. Mr. Carlton, a resident of Wyoming, is a licensed engineer and land surveyor in that State. Defendant contends that Mr. Carlton was not qualified to testify as an expert witness because he was not licensed to act as a surveyor in the State of Utah in accordance with Chapter 22, Title 58, U.C.A. 1953, which regulates the practice of engineering or land surveying.

The qualification of an expert witness is to be determined by the trial judge, and if he determines that a witness by reason of training and experience can assist the jury by giving an opinion on a matter properly before the court, we on appeal should not hold that testimony should be stricken unless such palpable ignorance of the subject matter is manifested by the witness as to indicate an abuse of discretion on the part of the trial judge in allowing the witness to express an opinion in the first place or in

refusing to grant a motion to strike after it is given.[1]

■ Defendant proffers no facts concerning the witness, either as to his lack of training or experience or as to his palpable ignorance of the subject matter, to indicate that the trial judge abused his discretion in permitting Mr. Carlton, as a qualified expert witness, to testify. His testimony was properly allowed as competent evidence.[2]

Defendant contends that the surveys conducted by Mr. Carlton and Mr. Moser, plaintiff's surveyors, were not conducted in conformity with the requirements set forth by law; and, therefore, the trial court erred in its determination of the location of the boundary line in accordance with these surveys.

Mr. Carlton located the government monument at the southwest corner of Section 16, he established a line to the south and located the monuments marking the quarter corners between Sections 20–21 and Sections 29–28, from whence he determined that his setting of a temporary corner at the northeast corner of Section 28 was correct. He proceeded east for a distance of 80 chains (one mile), where he found no cornerstone marking the southwest corner of Section 22. He continued on the same line for an additional 1320 feet, at which point he determined the boundary line between the sixteenth sections of the southwest quarter of Section 22 was located. Mr. Carlton used the township map to check bearings and distances; he did not use the field notes to check the location of the corner.

Mr. Moser commenced his survey at the government monument located at the southwest corner of Section 33; he went northerly and located the southwest and west quarter corners of Section 28; he determined a position which he accepted as the northwest corner of Section 28. He proceeded east along the north line of Section 28; he did not find government monuments at the north quarter or northeast corner of Section 28, which is also the southwest corner of Section 22. He continued east 1320 feet to locate the line between the two sixteenth sections.

Mr. Moser admitted that he did not arrive at the southwest corner of Section 22 by following the field notes of the original surveyor, as he established it. In 1875, the original surveyor went north between Sections 27 and 28 from the corner of 27, 28, 33, 34 for a distance of 80 chains and set the government monument for the corner to Sections 21, 22, 27, 28. He then pro-

---

1. State By and Through Road Comm. v. Silliman, 22 Utah 2d 33, 34–35, 448 P.2d 347, 348 (1968).

2. Marsh v. Irvine, 22 Utah 2d 154, 158, 449 P.2d 996 (1969); Webb v. Olin Mathieson Chemical Corp., 9 Utah 2d 275, 280, 342 P.2d 1094 (1959).

ceeded east on a random line until he intersected the north-south line at 80.50 chains at the previously established corner of Sections 22, 23, 26, 27. He was 50 links south of this corner; he corrected the line then ran back on a true line between Sections 22 and 27 and set the quarter corner at 40.25 chains, and proceeded back to the corner of Sections 21, 22, 27, 28, at a distance of 80.50 chains from the southeast corner of Section 22. When the original surveyor discovered the southwest corner of Section 22 was 33 feet off, he did not re-establish it; however, Mr. Moser in running his survey did correct this error.

Mr. Moser in his survey did not attempt to tie the point he accepted as the southwest corner of Section 22 into the natural objects cited in the field notes to the north, south or east of the corner. Mr. Moser did not attempt to locate the south quarter corner or southeast corner of Section 22 and tie them to the location of the boundary line or the southwest corner.

Plaintiff urges that if you have one or more in place original monuments located anywhere in the township and you have the angles and distances from the original field notes, the exact location of a disputed line can be determined, even though it is necessary to cross over lost or obliterated corners. Defendant contends that such procedure was improper and asserts that initially a determination must be made as to whether the southwest corner of Section 22 was lost or obliterated. If the corner were lost, it must be re-established by a double proportional measurement; a procedure not followed by plaintiff's surveyors. If the corner were obliterated, defendant's surveyors followed the proper procedure, and defendant argues that he should prevail.

Defendant's surveyors were Mr. Peterson and Mr. Johnson, who testified they used the surveying procedures of the Bureau of Land Management. Defendant introduced into evidence a pamphlet entitled "Restoration of Lost or Obliterated Corners and Subdivision of Sections * * * a Guide for Surveyors," 1963 Edition, issued by the United States Department of the Interior, Bureau of Land Management.

Mr. Peterson testified that he obtained a copy of the original field notes and township plat. He stated that the original surveyor started in the southeast corner of the township and then worked north and west. In accordance with the procedures in the aforementioned pamphlet, Mr. Peterson made inquiry of local landowners as to the location of the southwest corner of Section 22. Osro Cornia and Carter Cornia, ages 77 and 80 respectively, indicated that the monument had been located in a position where there presently exists a fence corner. (These two men also testified at the trial.)

Mr. Peterson then used original survey data to determine if the corner were in fact located at the place indicated by the Cornias, who were relatives of plaintiff. He checked the measurements from the corner to natural monuments cited in the field notes and compared the distances. He followed this procedure to the north, east and south. He attempted to locate the south quarter corner of Section 22, which according to the field notes was on the west bank of Twelve Mile Creek; it had disappeared but he observed an old fence that could possibly tie into the quarter corner. He proceeded east and located the area described in the field notes as the corner of Sections 22, 23, 26, 27. Mr. Peterson testified that all of his measurements indicated that the line might be farther west than the location stated by the witnesses but that he would not move it farther south as indicated by Mr. Moser because the original field notes indicate the corner was 1.3 feet from the branch of a creek; the Moser survey would move it away from the creek and low lands.

Mr. Peterson testified that in his opinion the southwest corner was located at the intersection of the fences; a location indicated by witnesses. Mr. Peterson was of the opinion that the south quarter corner of Section 22 was on the west bank of the creek or because of erosion in the creek; this would be a distance of 2570 feet from the section corner by his measurement. Using the single proportionate measurement[3] to locate the midway point between the quarter corner and section corner, he determined that the sixteenth corner was 22 feet west of the fence line reconstructed by defendant and which precipitated the instant action. However, Mr. Peterson expressed the opinion that he would consider the actual dividing line to be the fence line because of its existence for a number of years.

Defendant's second surveyor, Mr. Johnson, testified that he determined that the southwest corner of Section 22 was an obliterated and not a lost corner. His testimony was similar to Mr. Peterson's. Mr. Johnson further testified that Mr. Moser's procedures did not comply with those of the Bureau of Land Management either to establish a lost corner or to relocate an obliterated corner.

The location of the sixteenth corner in the instant case is dependent on the location of the southwest corner and south quarter corner of Section 22, since by law the sixteenth corner is located midway between these two points.[4] The pamphlet in-

3. The measurement made by the original surveyor, the measurement made by the present surveyor, and the specified distance of 80 rods, and then proportioning these to derive the distance.

4. Title 43, Sec. 753, U.S.C.A.

**360**

troduced in evidence, "Restoration of Lost and Obliterated Corners and Subdivision of Sections" provides at page 27:

21. Preliminary to the subdivision of quarter sections, the quarter-quarter, or sixteenth-section corners will be established at points midway between the section and quarter-section corners, and the center of the section,[5] * * *

The quarter-quarter, or sixteenth-section corners having been established as directed above, the center lines of the quarter section will be run straight between opposite corresponding quarter-quarter, or sixteenth-section corners on the quarter-section boundaries. The intersection of the lines thus run will determine the legal center of a quarter section.

In its findings of fact, the trial court failed to determine whether the southwest corner of Section 22 was lost or obliterated, for this reason this cause must be reversed for a new trial. Judge Jones made a preliminary ruling that the corner was lost; in such a case, it must be restored by a double proportionate measurement, a procedure not utilized by

plaintiff's surveyors. Plaintiff has not cited any authority to support his argument that a corner may be relocated by following distances and courses from an in-place government monument, which is not located on either the same meridional or latitudinal line as the corner sought to be re-established.

As the basis of re-establishing a lost corner there could be no justification to do so by running a single east-west line from one known corner, any more than by running a single line either east-west or north-south from any of the other known corners. And when such lines are run from all of the known corners, four different termini corners are obtained (* * *). That is what necessitates use of the double proportionate measurement method when the corner cannot be determined by other acceptable evidence.[6]

In the aforementioned government pamphlet, it is stated at page 14:

10. A lost interior corner of four sections will be restored by double proportionate measurement.

When a number of interior corners of four sections, and the intermediate quar-

---

5. "To find the common corner of quarter sections or the legal center of a section of land, straight lines must be run from the quarter section corners on the boundary of the section to the opposite quarter corners, the point of intersection constituting the legal center, * * *."

Barbizon of Utah, Inc. v. General Oil Co., 24 Utah 2d 321, 324, 471 P.2d 148, 150 (1970).

6. Reid v. Dunn, 201 Cal.App.2d 612, 20 Cal.Rptr. 273, 277–278 (1962).

ter-section corners, are *missing on all sides of the one sought to be re-established,* the entire distance between the nearest identified corners both north and south, and east and west, must be measured. Lost section corners on the township exteriors, if required for control, should be relocated. [Emphasis added.]

In the pamphlet the following definition is at page 12:

7. The term "double proportionate measurement" is applied to a new measurement made between four known corners, two each on intersecting meridional and latitudinal lines, for the purpose of relating the intersection to both.

\*　　\*　　\*　　\*　　\*　　\*

The double proportionate measurement is the best example of the principle that existent or known corners to the north and to the south should control any intermediate latitudinal position, and that corners east and west should control the position in longitude.

On the other hand, prior to any determination that a corner be deemed obliterated, it is the prerogative of the trial court to review the evidence and determine whether the alleged location of the corner as testified to by the witnesses corresponds in any particular with the original field notes.[7]

If the boundary dispute in the instant action be resolved on the basis of a survey, the primary issue is whether the southwest corner of Section 22 is obliterated or lost.

In the relocation or re-establishment of government corners, there is a distinction drawn between an obliterated corner and a lost corner; in the former, the investigation is directed toward the determination of its original location; while in the latter, the corner is relocated by a new survey. An obliterated corner may be defined as one where no visible evidence remains of the work of the original surveyor in establishing it. Its location, however, may have been preserved beyond all question by acts of landowners and by the memory of those who knew and recollect the true situs of the original monument. In such a case, it is not a lost corner. A lost corner is one whose position cannot be determined, beyond a reasonable doubt, either from original marks or reliable external evidence.[8] A lost corner is one which cannot be replaced by reference to any existing data or sources of information, although it is not necessary that evidence of its physical location may be seen or that one who has seen the marked corner be produced. A corner will not be regarded.

---

7. Fehrman v. Bissell Lumber Co., 188 Wis. 82, 204 N.W. 582, 584 (1925).

8. Henrie v. Hyer, 92 Utah 530, 535–536, 70 P.2d 154 (1937).

**362**

as lost where it may be located by field notes referring to discoverable natural objects.[9]

In Reid v. Dunn[10] the court observed that if there be some acceptable evidence of the original location, that position will be employed in preference to the rule that would be applied to a lost corner. The court stated:

* * * If monuments are obliterated and undiscoverable, corners should be re-established wherever possible in accordance with natural objects described in the field notes of the original survey. And the proportional method must not be resorted to unless the line cannot be re-traced and its corners relocated by reference to natural objects of the field notes and all other prescribed methods fail.

Upon remand, the trial court might consider the following:

* * * The task of the court, when confronted with an obliterated corner, uncertain boundary location and the like, is to "decide from the data appearing in evidence its approximate position" when the exact spot cannot be found, and "fix the place at a point where it will best accord with the natural objects described in the field notes as being about it, and

found to exist on the ground, and which is least inconsistent with the distances mentioned in the notes and plat." Weaver v. Howatt, supra, 161 Cal. [77] at page 86, 118 P. [519] at page 522.[11]

Finally, each party claims to have established a boundary line by acquiescence; this issue was before the trial court, but no findings were made thereon.

Cornia Lane travels in a north-south course and terminates in the southerly third of the disputed area at the point where it intersects at a right angle with the Monte Cristo Road. The Monte Cristo Road traverses Section 22 in the disputed area at an approximate distance of 450 feet north of the south line of the section and travels in a more or less east-west direction. Plaintiff relies on the doctrine of boundary line by acquiescence based on the evidence of his and his predecessors in interest occupation, since the 1880's, of the land south of the Monte Cristo Road and west of Cornia Lane. Defendant, relying on the same doctrine, emphasizes the evidence concerning the fence line, a portion of which each party constructed, which creates a north-south line north of the Monte Cristo Road. In other words, approximately two thirds of the disputed

9. Chandler v. Hibberd, 165 Cal.App.2d 39, 332 P.2d 133, 141 (1958).

10. Note 6, supra, at page 275 of 20 Cal. Rptr.

11. Chandler v. Hibberd, Note 9, supra, at page 144 of 332 P.2d.

strip lies north of the Monte Cristo Road, and it is only the southerly third that has Cornia Lane as an alleged boundary.

The weakness of plaintiff's position is that the boundary line along Cornia Lane which he insists was established by acquiescence has no visible line marked definitely by monuments,[12] extending north of the Monte Cristo Road. Defendant's extension of the fence line to the south of the Monte Cristo Road indicates similar evidentiary weaknesses; he first built the extension south in the early 1940's; it fell into disrepair, when he attempted to reconstruct it, this action was initiated. Each party insists that the boundary line which he claims has been established through acquiescence for a portion of the total distance should be projected for the entire length of its north-south course. Upon a new trial, the court might determine that the boundary is no longer a straight line as each party contends, but that north of the Monte Cristo Road, the boundary is in line with the fences constructed by the parties; and that to the south of the Monte Cristo Road, Cornia Lane marks the boundary.

The judgment of the trial court is reversed, and this cause is remanded for a new trial in accordance with this opinion.

TUCKETT and CROCKETT, JJ., concur.

HENRIOD, J., concurs in the result.

ELLETT, Justice, (dissenting):

I dissent. I think that the location of the boundary line was for the trial court under the evidence given and that we should not return the case for a new trial. Undoubtedly all of the evidence available has already been presented, and a new trial would only work an undue and unnecessary hardship upon the parties to this lawsuit. If under the evidence given and findings based thereupon either party should prevail as a matter of law, we should say so.

The main opinion seems to reverse the case because the trial court did not determine whether a corner was *lost* or *obliterated*. The trial court probably believed the statement of this court in the case of Henrie v. Hyer, 92 Utah 530, 70 P.2d 154 (1937), relied upon in appellant's brief and cited in the prevailing opinion. This court in that case at pages 536, 537, and 538 of the Utah Reports at page 157 of 70 P.2d said:

In the instant case, whether the corner were an *obliterated corner* or a *lost corner* the result must be the same. * * *

* * * * * *

* * * Surveyors, in making resurveys or in searching for or relocating or

12. Fuoco v. Williams, 18 Utah 2d 282, 284, 421 P.2d 944 (1966).

re-establishing *lost* or *obliterated* corners, may consider extrinsic and material evidence, as well as the field notes, if there is doubt or uncertainty in the field notes, for the purpose of determining the exact location of lost lines or corners of the original survey. * * * [All emphasis added.]

In the instant matter there was neither doubt nor uncertainty in the field notes. The respondent called three surveyors to testify as to surveys they had separately made. In determining where the dividing line between the land owned by the parties was, those three surveyors started from different known markers—still in place—and each used a copy of the original survey. Two of those witnesses were graduates from college and had had much experience in surveying. The third witness was not asked if he held a degree from a recognized college, but he was a range technical supervisor for the Bureau of Land Management, for whom he had worked for thirty-three years. These three surveyors found five original government survey markers in place, three of which were corner monuments located at the southwest corners of Sections 16, 28, and 33, and two of which were west quarter corners of Sections 21 and 28. There was ample evidence given to enable the court to locate the boundary as he did.

Of the two surveyors who testified for the appellant, one had no degree from any college and the other was the husband of appellant's granddaughter. It was the prerogative of the trial judge to weigh the testimony of the witnesses, and he was under no compulsion to believe the testimony of either witness called by the appellant, nor was he compelled to believe that the surveys made by appellant's witnesses were more likely to be correct than were those made by the witnesses called by the respondent.

The purpose of all of the surveys was to locate a boundary line between lands owned by the parties—not to relocate either a lost corner or an obliterated corner. Besides, it is the statutory duty of the county surveyor to re-establish missing or obliterated government lines and corners (Sec. 17–23–9, U.C.A. 1953).

The court went upon the land and observed the country round about it, including markers, fences, lanes, etc., and under the evidence presented to him, it is my opinion that he was justified in finding that the dividing line between the properties was the west line of Cornia Lane.

I would, therefore, affirm the judgment.