## STATE v. MOLITZ.

No. 2289.   Decided March 9, 1912 (122 Pac. 86).

1. HOMICIDE—CRIMINAL RESPONSIBILITY—DEFENSES—SELF-DEFENSE. While a person need not have actually been armed to justify another in shooting in self-defense, the shooting must not have been without apparent cause, and a mere showing that a person shot made a motion toward his hip pocket will not necessarily excuse his assailant from criminal liability for his act. (Page 446.)

2. CRIMINAL LAW—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE. Where, in a prosecution for assault with intent to murder, in which the defendant was convicted of an assault with intent to do bodily harm, the shooting, which was the basis of the charge, was shown to have taken place in broad daylight, and the facts thereof were testified to by eight or nine witnesses, the granting of a motion for new trial on the ground of newly discovered evidence is not justified by affidavits showing evidence which merely corroborates the defendant's version and to some extent contradicts or modifies the statements of some of the state's witnesses; such testimony being merely cumulative. (Page 447.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Paul Molitz, alias Paul Melizia, was convicted of assault with intent to do bodily harm, and he appeals.

AFFIRMED.

*Weber & Olson* for appellant.

*A. R. Barnes,* Attorney-General, and *E. V. Higgins* and *Geo. C. Buckle,* Assistant Attorneys-General, for the State.

FRICK, C. J.

The appellant was charged with the crime of assault with intent to murder, and upon a trial was convicted of an assault with intent to do bodily harm. From the judgment of conviction, he prosecuted this appeal.

The evidence, very briefly stated, on behalf of the state, is to the effect: That one Nick Lamont, the prosecuting witness, on the 29th day of November, 1910, went into his saloon, which was however, conducted by other parties, and which was located on West South Temple Street in Salt Lake City. That he went to said saloon shortly before noon, and after taking a drink he came out of the front door thereof and met the appellant and another young man named Oakley standing in front of the saloon on the sidewalk. That Lamont spoke to the young man, saying, "What are you fellows doing here?" That he spoke to Oakley and said: "I do not want you around my place at all. I ordered you out of my place before, and I don't want you around my place of business; stay away from here." That he took hold of Oakley by the shoulder, and while doing so also said to appellant: "You, too, stay away. You people stay away from here." That thereupon Oakley started to go away, and the appellant "stepped back and pulled a gun and began to shoot." That appellant shot five times, one of the shots taking effect, the bullet striking Lamont's lip and entering his mouth, passing out of the side of his face through his cheek. The appellant, Lamont says, was only a few feet from him when the shots were fired as aforesaid. That at the time of the shooting Lamont was unarmed; but, as soon as the appellant ceased firing, Lamont went back into the saloon and got his gun from his desk, and he returned to the sidewalk, but saw the appellant running west away from his saloon. In addition to Lamont, there were four eyewitnesses to the shooting, some of them being only a few feet away from him and appellant when it occurred, who substantially corroborated Lamont's statements with regard to how the shooting occurred.

The appellant, on his own behalf, in substance testified: That he was in the saloon when Lamont came in, and that when he came in he was under the influence of liquor and was angry, and said, "Somebody kill me, or I'll kill him." That the appellant then went out of the saloon in the street. That Lamont came out of the saloon and said he would kill appellant. That Lamont passed his hand to his hip pocket but did not pull out his gun, when appellant immediately pulled his gun and started to shoot, and continued to do so until he had discharged his revolver five times. The appellant is, to a certain extent at least, corroborated by two other eyewitnesses. None of the other witnesses, however, saw Lamont have a gun, but they say he reached in the direction of his hip pocket and the appellant commenced to shoot.

The appellant filed a motion for a new trial, one of the grounds of which was based upon newly discovered evidence. The trial court denied the motion, and the only assignment of error that is argued in this court is that the court erred in not granting a new trial upon the ground of the alleged newly discovered evidence. The evidence alleged to be newly discovered is set forth in seven or eight affidavits, and both the appellant and his attorneys have also filed affidavits in which they set forth that neither of them knew of the alleged newly discovered evidence at the time of, or before, the trial. The affidavits are all made by residents of Salt Lake City, some of whom lived and were engaged in business near where the shooting occurred at the time of its occurrence. One or two, however, state that some time after the occurrence the witnesses left Salt Lake City and did not return until after the trial, and that neither before leaving the city nor thereafter before the trial took place was the information contained in the affidavits imparted either to the appellant or his attorneys, or either of them. The statements contained in the affidavits are to the effect that the witnesses were some distance away from where the shooting occurred, and while they did not see Lamont have a gun, they saw him reach toward his hip pocket just

before the shooting commenced. One of the witnesses says, however, that he was subpoenaed as a witness on behalf of the appellant, but left the city before the trial was had. The appellant, however, did not make this fact appear at the time of trial, nor did he ask for a continuance. Two policemen of Salt Lake City also make affidavits to the effect that they went into the saloon a short time after the shooting, but did not see any blood marks on the floor of the saloon or on or near the desk to which Lamont said he went after he was shot for the purpose of getting his revolver. From the latter's statements the inference is sought to be deduced that Lamont did not go into the saloon to get his gun as he said he did. This inference is, however, weakened, if not destroyed, by some of the appellant's own witnesses, who say that they did see Lamont go into the saloon immediately after the shooting occurred. The most that can be said of the newly discovered evidence is that it, to some extent at least, corroborates the appellant's version of the shooting, and that it to some extent also contradicts or modifies the statements of some of the state's witnesses in other respects. The statements contained in the affidavits are, however, couched in the most general terms, and in view of all the facts and circumstances in evidence before the jury, even though the statements should be believed by them, it is still as probable that the verdict would still be the same upon another trial as it is that it would be to the contrary.

It is certainly true that as a matter of law the appellant is just as amenable to punishment for his acts in shooting Lamont if the statements contained in the affidavits are assumed to be true, as he would be if they are assumed to be false. There is nothing contained in these statements that could afford the appellant an excuse for shooting at the time and in the manner he did, although it were assumed that Lamont did make a motion with his hand in the direction of his hip pocket. Some of the newly discovered witnesses do not even seem to know with what hand Lamont made the motion towards his pocket, and

none of them state that he saw Lamont have a gun, or that he in fact had one when the shooting took place. It may be conceded that it is not essential in all cases that the alleged assailant should be in fact armed in order to justify one who is accused of shooting to act or shoot in self-defense, but it is still true, as a matter of law, that the accused must act as a reasonable man and not shoot another without at least some good apparent cause for doing so.

Furthermore, we must not lose sight of the controlling fact in this case that the shooting occurred in broad daylight; that it was seen by four or five eyewitnesses who testified on behalf of the state and by three or four more who testified on behalf of the appellant. The jury, therefore, had the facts from eight or nine eyewitnesses, and what possible effect the statements of a few more, whose opportunity to see and hear was admittedly not so good as was the opportunity of those who testified, could have upon the jury, we confess is hard to conceive. That the effect could be of no great consequence is made apparent from the statements contained in the affidavits themselves. Such statements merely confirm or impugn the statements of other witnesses, and hence nothing is really added to the weight of the evidence either way.

From the foregoing it seems to us that, entirely apart from the question of whether appellant can legally avail himself of the alleged newly discovered evidence because of lack of diligence upon his part in discovering it before trial, it is nevertheless clear that, for the reasons suggested, such evidence comes clearly within what is termed "cumulative," and is of the kind for which courts ordinarily are not authorized to set aside verdicts and grant new trials.

The judgment, therefore, should be affirmed. It is so ordered.

McCARTY and STRAUP, JJ., concur.