449 P.2d 996

Parley MARSH, Plaintiff and Respondent

v.

Robert Bryce IRVINE, Defendant and Appellant,

James Blackwood Neil, Defendant and Respondent.

No. 11255.

Supreme Court of Utah.

Jan. 24, 1969.

CROCKETT, Chief Justice:

Plaintiff Marsh brought suit to recover for his personal injuries resulting from the collision of two automobiles: defendant Irvine's in which plaintiff was riding; and defendant Neil's which ran into the rear of the Irvine car just after it had entered U. S. Highway 201 from the Kennecott Mill Road near Magna. Upon a jury trial, verdicts were rendered of no cause of action as to Neil and holding Irvine liable.

Irvine, the losing defendant, appeals assigning errors in a familiar pattern: that the evidence will not support a finding that he was negligent; that it shows so clearly that the trial court should have ruled as a matter of law that the fault was that of the other driver Neil; and that the trial court compounded those errors by other related ones in improper instructions to the jury and rulings on evidence.

Plaintiff Marsh and defendant Irvine are fellow employees at the Kennecott Copper Company Mill in Magna. Marsh pays Irvine 75 cents per day for a ride to and from work so the protection of the guest passenger statute does not apply and Irvine would be liable for ordinary negligence.[1] After getting off work at about 4:30 p. m. on November 9, 1964, they drove northward along the Mill Road to the stop sign at the entrance to Highway 201.

Strong & Hanni, L. L. Summerhays, Salt Lake City, for defendant and appellant.

Gayle Dean Hunt, Salt Lake City, for plaintiff and respondent.

Hanson & Garrett, Don J. Hanson, Salt Lake City, for defendant and respondent.

---

1. See Sec. 41-9-1, U.C.A.1953; Jensen v. Mower, 4 Utah 2d 336, 294 P.2d 683; Ricciuti v. Robinson, 2 Utah 2d 45, 269 P.2d 282.

It is a four-lane arterial highway, two east and two west. Incidentally, at that point they picked up two other passengers. Defendant Irvine states that he looked for cars coming from the west and thought he had about 500 feet clearance of oncoming traffic when he entered the highway. He proceeded in a northeasterly arc across the outside lane and into the inside lane of traffic, and thus into the path of the Neil automobile which was coming in that lane from the west and which struck him in the rear.

In support of his argument that the fault was upon the other driver Neil, and not himself, Irvine postulates that it would take him 3.3 seconds to travel from the stop sign to the inside lane where he had attained a speed of *about* 15 miles an hour, and that in accelerating to *about* 35 miles per hour in *about* 180 feet to the point of impact it would have taken him *about* 5 seconds more. From this he argues that at 60 m. p. h., 88 feet per second, Neil would have had to be "some six or seven hundred feet west of the intersection when Irvine first started out from the stop sign" and thus had sufficient time in which to slow down and avoid collision with the Irvine car.

The difficulty with Irvine's argument is one which is not uncommon in such situations: it is based upon estimates as to time, speeds and distances, and therefore upon hypotheses that are not necessarily as firm as counsel like to assume for the purpose of calculations to produce a desired result.

As opposed to the evidence relied upon by Irvine there is another side of the picture. At this time of day people were getting off work and the traffic was heavy; there was obviously some hazard in entering the arterial highway. This is pointed up by the fact that as Irvine was hesitating at the stop sign, one of the "backseat drivers," a Mr. Beck, said, "It is clear, let's go," urging Irvine to go ahead, which the latter complied with.

There are also other aspects of the evidence which can be considered as bearing against Irvine's contention as to where Neil was when Irvine entered the highway. When Neil first saw the Irvine car pull over in front of him, he applied his brakes, found it impaired control of his car, released them for a distance, then reapplied them, which slowed him down to about 30 m. p. h. at the time of striking the Irvine car, which according to the estimate of Officer Hayward was 140, rather than 180 feet east of the Mill Road. These facts would make it quite uncertain as to where Neil was when Irvine pulled into the highway. And the capstone of the opposing evidence is the statement of Neil that he was only about 150 feet west of the Mill Road when Irvine pulled into the highway and across the outside lane and in front of him, and that in spite of Neil's

effort in applying his brakes, he was unable to avoid the collision.

■ We agree that the jury should not be allowed such unbridled license as to base its verdict upon something which would be a physical impossibility.[2] But in view of the uncertainties of the hypotheses relied on by Irvine, and the countervailing evidence just recited, that does not appear to be the situation here. It was the jury's prerogative to choose the evidence they would believe and to place whatever emphasis and draw whatever reasonable inferences therefrom they desired so long as they were not wholly inconsistent with reason.

In connection with their analysis of the evidence to determine where the fault lay, they were not only entitled to, but properly should, take into consideration these propositions as to safety: that traffic on the arterial highway (Neil) had the right of way; that he had the right to rely thereon until in the exercise of reasonable care he saw something to warn him to the contrary; that the purpose of the stop sign was to compel the entering driver (Irvine) to honor the right of way and not to enter the highway until it appeared that he could do so with reasonable safety.

■ It should be kept in mind that the defendant Irvine would not escape liability simply by showing that the other defendant Neil was negligent. Even if the evidence compelled a finding that Neil was negligent, the evidence would also have to compel a finding that Irvine was *not* negligent and that thus Neil's negligence was the sole cause of the accident, because it is the long-established rule that if the negligent acts of two or more persons concur in injuring another, either or both may be held responsible.[3]

■ Upon our survey of the total circumstances, it is our conclusion that the trial court was correct in ruling that the question whether defendant Irvine met the requirements of reasonable care stated above was one upon which reasonable minds might differ; and that he submitted the issues to the jury in a clear and understandable manner, which is all we think it necessary to say about the several claims of error relating to the instructions.[4]

■ The errors assigned about rulings on evidence relate to the admission and exclusion of certain of the testimony of two experienced police officers which involved the use of times, speeds, stopping

2. See Haarstrich v. Oregon S. L. R.R. Co., 70 Utah 552, 262 P. 100.
3. See Magnolia Petroleum Co. v. Sutton, 208 Okl. 488, 257 P.2d 307; Taylor v. Luxor Cab Co., 112 Cal.App.2d 46, 246 P.2d 45.

4. Cf. in statement re instructions in Badger v. Clayson, 18 Utah 2d 329, 422 P.2d 665.

distances, and drag factor (coefficient of friction). Without belaboring the detail thereof we make the following general observations which are controlling here. When it appears that the determination of an issue will be aided by knowledge of something which is not generally known by laymen, it is in order to permit one who has specialized knowledge on the subject, and thus may properly be called an expert, to testify concerning his knowledge and/or his opinion to provide better understanding of the situation.[5] Because of his position as the authority in charge of the trial, the trial judge should be allowed a reasonable latitude of discretion both as to the necessity for such expert testimony and as to the qualification of the witness to give it.[6] We are not persuaded that he transgressed the bounds of reason or abused his discretion here.

Affirmed. Costs to plaintiff (respondent).

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

5. See Hooper v. General Motors Corp., 123 Utah 515, 260 P.2d 549.

6. Cf. Allen v. First Nat. Bank of Atlanta, 5 Cir., 169 F.2d 221.