STATE of Utah, Plaintiff and Respondent,

v.

Theodis FORT, Defendant and Appellant.

No. 15197.

Supreme Court of Utah.

Dec. 22, 1977.

Lynn R. Brown, Salt Lake Legal Def. Assn., Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Appeal from conviction of the felony offense of distribution of a controlled substance for value.[1]

The prosecution of this case was the result of a "controlled buy" of heroin staged by police officers who furnished funds to an informant kept under surveillance. When the informant emerged from the premises he related having purchased heroin from a person called "Otis" and having been promptly forced by him to "shoot up" his heroin purchase before leaving. He was observed to have constricted pupils and blood oozing from a needle mark in his arm. He had no money. Thereafter, one of the officers executed an affidavit for a search warrant setting forth the facts related by the informant, verifying the previous reliability of the informant (an earlier purchase of heroin elsewhere the same evening and previous tips on locations where heroin was sold), and setting forth his considerable experiences as a narcotics investigator including a two-month surveillance of said premises. Based thereon a warrant was issued and the resultant search found defendant, a small amount of money, 14 balloons (the only one of which was chemically tested contained heroin), paraphernalia consisting of cotton, tie-offs, syringes, spoons and a number of empty balloons discarded in a beer can.

At trial, the court permitted a deputy sheriff with some 18 months experience as a narcotics investigator to testify as an expert witness on the subjects of heroin use, distribution and packaging.

The jury was instructed on the lesser and included offense of possession, but the court declined to give defendant's requested instruction on reasonable alternative hypothesis, taking the position that since both direct and circumstantial evidence were present the usual instruction on reasonable doubt alone was proper.

Defendant asserts the trial court erred 1) in failing to suppress evidence obtained by a search warrant issued without probable cause; 2) in not holding as a matter of law that the evidence was insufficient to sup-

---

1. U.C.A., 1953, 58–37–8(1)(a)(ii).

port a conviction of distribution; 3) in allowing expert testimony from one not so qualified; and 4) in failing to give an instruction on reasonable alternative hypothesis.

■ In regard to the sufficiency of the search warrant, the affidavit in support thereof may be based on hearsay [2] providing there is a showing of underlying circumstances justifying a conclusion of the informant's reliability and credibility,[3] and the probability, not a prima facie showing, of criminal activity is the standard of probable cause for issuance of a search warrant.[4]

■ Taking a practical, commonsense and realistic [5] view of the affidavit, we believe it clearly set forth the combined personal knowledge and experience of the affiant and the information of the informant so as to adequately support the search warrant.

■ The issue raised as to the sufficiency of the evidence is governed by the well recognized principle of appellate review that in order to overturn a verdict on that ground it need be made to appear that reasonable minds must necessarily entertain a reasonable doubt of guilt.[6] It is not our prerogative to weigh the evidence [7] but that of the fact finder to assess its weight and sufficiency.[8]

■ There was substantial evidence to support the verdict. It consisted of heroin and various drug related paraphernalia being found on the premises and testimony that said premises were utilized as a "shooting gallery" allowing for prompt consumption of the heroin by the purchaser. The jury could reasonably draw inferences ei-

ther that the heroin was held for distribution or for personal use. It was certainly not bound to accept defendant's assertion of simple possession, a lesser and included offense.[9]

Defendant's third claim of error asserts an abuse of discretion in allowing the opinion testimony of a deputy sheriff who was unable to express the "normal" use of heroin by an individual.

■ The trial court has considerable latitude of discretion in determining the qualifications of a witness [10] and the opinions of experienced law enforcement officers are competent evidence.[11] In regard to the propriety of opinion testimony, the subject matter of heroin use is clearly beyond the general knowledge of the average person and the admission thereof would be helpful to the jury in its deliberation.[12]

The evidence was that the deputy had been assigned to the narcotics division of the Salt Lake County Sheriff's Office for a year and one-half. He had worked "undercover" and had purchased narcotics numerous times, supervising many other purchases. He was knowledgeable about "shooting galleries" and their operation as well as the packaging, transportation and sale of heroin.

The portion of the record of the deputy's testimony which defendant relies upon as representative of his ineptness as an expert reads as follows:

Q. Do you know for a fact chronic heroin users can use up to three to four hundred dollars worth of heroin in a day?

A. I've heard of it happening. Here on the average it's four balloons a day.

Q. You've heard of it happening?

2. *State v. Smelser*, 23 Utah 2d 347, 463 P.2d 562 (1970); *Allen v. Lindbeck*, 97 Utah 471, 93 P.2d 920 (1939).

3. *State v. Treadway*, 28 Utah 2d 160, 499 P.2d 846 (1972).

4. Id.

5. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

6. *State v. Wilson*, Utah, 565 P.2d 66 (1977).

7. *State v. Romero*, Utah, 554 P.2d 216 (1976).

8. *State v. Canfield*, 18 Utah 2d 292, 422 P.2d 196 (1967).

9. U.C.A., 1953, 58–37–8(2)(a)(i).

10. *State v. Mason*, Utah, 530 P.2d 795 (1975).

11. *State v. Bankhead*, 30 Utah 2d 135, 514 P.2d 800 (1973).

12. Rule 56, U.R.E.; See also McCormick on Evidence, Sec. 13 (E. Clearly, 2d ed.)

A. Yes, sir.

Q. You're—you haven't any personal knowledge with respect to that? You testified—is that correct?

A. That's correct.

Q. You testified that you knew a few heroin addicts and you've talked to others; is that correct?

A. I know several hundred heroin addicts; yes, sir.

Q. Do you know for a fact chronic heroin users can use from three to four hundred dollars a day in heroin; don't you?

A. I'm not sure what you mean by "chronic heroin user."

Q. One that has a heavy habit.

A. A person that has a heavy habit will use as much as he can get his hands on.

Q. That could be as much as three or four hundred dollars a day; wouldn't that be correct?

A. Possibly; yes, sir.

A fair reading of the foregoing does not persuade us of a sufficient lack of knowledge as would disqualify him. In fact, a portion of the record immediately preceding the above compels us to conclude to the contrary:

Q. So, you're going strictly on the number of balloons that were there? Do we have—.

A. Not strictly on the number of balloons; no, sir. It's the paraphernalia used in a shooting gallery. It would be the number of people we seen going in and out, known users going in and out. All the culmination of that leads me to believe that the place is a shooting gallery and that it was packaged for the purpose of selling.

Q. Well, but the only thing that—there's nothing there that indicates any of the packaging was done there?

A. No, sir. I do not believe the packaging was done there.

Q. Do you know that—have any knowledge with respect to the purity of the substance that was located in these balloons?

A. Yes, sir.

Q. Do you know this from your own personal knowledge or from discussion?

A. From discussion.

Q. Do you know how much one of these balloons would sell for on the market?

A. Yes, sir.

Q. How much?

A. Thirty Dollars.

Q. So, multiplying that by 14 we get over $300; isn't that correct?

A. I would just—doing it in my own head it would be some where in there; three to four hundred dollars; probably five hundred dollars with the cocaine.

The total circumstances here reflect special knowledge, skill, experience or training of the witness as is necessary to qualify him as an expert [13] and the trial judge did not abuse his discretion in admitting the opinion evidence.

 Defendant's final assignment of error regarding the court's refusal to give a jury instruction on reasonable alternative hypothesis has been discussed by this court a number of times. In *State v. Garcia* [14] the universal rule was recognized that no jury question arises without substantial evidence of guilt beyond a reasonable doubt, and where a necessary element of guilt consists of circumstantial evidence, such circumstances must preclude every reasonable hypothesis of innocence. It was also determined in *Garcia* that where the proof is based solely upon circumstantial evidence a clearly defined instruction or reasonable alternative hypothesis is proper.

In the case before us there was direct proof on all elements necessary for conviction, hence the rule has no applicability. The physical evidence, (heroin and paraphernalia) the testimony of the informant as to the purchase, and the testimony of the deputy was all direct evidence. The fact that there was a *combination* of direct and

---

13. Id.

14. 11 Utah 2d 67, 355 P.2d 57 (1960), citing therein a number of Utah cases in accord.

circumstantial evidence did not warrant application of the rule.

Defendant cites *State v. Schroff* [15] as supportive of his position, however, the charge there was cultivation and production of marijuana supported *solely* by circumstantial evidence which of course required an application of the rule.

The court properly left the determination of guilt to the jury on the basis of an instruction on reasonable doubt.

Affirmed.

ELLETT, C. J., and CROCKETT and MAUGHAN, JJ., concur.

WILKINS, J., concurs in the result.

---

15. 30 Utah 2d 125, 514 P.2d 793 (1973).