STATE of Utah, in the Interest of M_____ S_____, a person under eighteen years of age.

No. 15485.

Supreme Court of Utah.

Sept. 21, 1978.

Gary L. Barnett of Utah Legal Services, Salt Lake City, for appellant.

Robert B. Hansen, Atty. Gen., Michael L. Deamer, Deputy Atty. Gen., William W. Barrett, Asst. Atty. Gen., Olof Johansson, Deputy Salt Lake County Atty., Salt Lake City, for respondent.

HALL, Justice:

Appellant, a juvenile, was charged with assault with a deadly weapon in violation of U.C.A., 1953, 76–5–103(1)(b), for having allegedly shot another youth in the leg. The juvenile court, Judge Judith Whitmer, found the allegation to be true. The matter was then set for disposition before Judge Regnal Garff. Appellant was committed to the Youth Development Center, which order was suspended upon condition that he commit no further felonies nor exhibit assaultive behavior. Custody and guardianship was transferred to the Utah State Division of Family Services for placement at the Utah Boys Ranch.

Appellant seeks reversal of the findings and order, claiming error for failing to acquit on self defense. Furthermore, he claims the court erred in denying his motion for a new trial based on perjury of the witnesses and in setting the disposition hearing before a judge other than the one before whom the adjudication hearing was heard.

On May 20, 1977, appellant and one Tony Maestas, also a juvenile entered the game room at Trolley Square in Salt Lake City. The two boys approached two girls, Sharon Reeves and Kathy Hire, and asked if the girls would like to play an electronic racing game. The girls agreed and during the game two older boys, Mike Bennett and Cory John appeared. Bennett told appellant and Maestas to "get lost" as the girls were with them. An argument ensued and Maestas threatened Bennett. Bennett thereupon grabbed Maestas, searched his coat pockets for weapons and shoved him backward. Appellant and Maestas left the game room and proceeded downstairs and left the building where they waited outside. Bennett came down the stairs a few minutes later and was confronted by Maestas who then had a knife. Bennett reentered the building and informed John that appellant and Maestas had threatened him with a knife. John ran down the stairs with Bennett close behind, carrying a pool cue.

While there is some conflict in the testimony concerning the events that ensued it is clear that Bennett and John set out in pursuit of appellant and Maestas who ran into the parking lot. Sharon Reeves, who had followed Bennett and John, testified that "Cory was running after the two kids, Mike was running after Cory and I was running after both of them." The chase continued into an area where a construction project was under way. At that time appellant produced a gun and aimed it at Bennett who was pursuing him. There is conflicting testimony as to whether the pool cue was being held in a threatening manner, as to the distance between appellant and Bennett, and as to whether appellant ever warned Bennett. It is clear, however, that appellant fired one shot into the

ground and a second shot which struck Bennett in the leg.

The trial judge made the following finding relating to the claim of self defense:

4. Although the issue of self-defense was raised by counsel for Mr. S——, according to the testimony a period of time from two minutes to ten minutes elapsed between the time of the incident inside Trolley Games which provoked the attack and the assault. Mr. S—— had ample opportunity to exit the building, and, in fact, Mr. S—— did exit the building prior to the confrontation with the victim in the parking lot.

██ Under Utah law there is no duty to retreat from an assault. There is, however, a duty to act reasonably in defending oneself.[1] The trial court concluded that the time lapse between the initial assault in the game room and the shooting incident was sufficient to defeat a claim of self defense. Appellant asserts that the shooting was self defense in response to a further threat in the parking lot, with Bennett holding a cue stick. There is conflicting testimony as to whether or not Bennett was doing anything of a threatening nature. By discounting appellant's claim of self defense, the trial court chose not to believe appellant's version of the facts. This Court's function is not to determine guilt or innocence, the weight to give conflicting evidence, the credibility of witnesses, or the weight to be given a defendant's testimony;[2] rather, we must decide if there is substantial evidence to support the judgment.

██ Appellant asserts that the testimony of the witnesses against him was perjured. As indicated above, the finder of fact has the duty of deciding who to believe when evidence is conflicting. There is substantial evidence in the record for the trial court to conclude that the allegations were true and that appellant was not acting in self defense. Furthermore, a person is not guilty of perjury[3] unless he is duly tried

and convicted in a court of law. Neither Bennett nor John were found to be guilty of perjury and their testimony must be treated as being true. Appellant's motion for a new trial based on perjury was properly denied.

██ The final claim of error relates to the disposition of the case. Rule 25 of the Utah Rules of Juvenile Court Procedure provides that "the judge who presided at the adjudicatory hearing shall, wherever possible, preside at the dispositional hearing." The obvious reason for such Rule is to insure that the judge who presides at the disposition hearing is familiar with the case so as to secure for each child such "care, guidance, and control . . . as will serve his welfare and the best interest of the state."[4] Judge Whitmer presided at the adjudicative hearing only because Judge Garff was unable to hear it. Besides providing written findings, Judge Whitmer furnished Judge Garff with a departmental memorandum listing her perceptions of the case. Appellant had been in Judge Garff's court several times prior and Judge Garff was familiar with appellant's past record and past probation as well as appellant's emotional and family problems. The intent of Rule 25 was satisfied by Judge Garff's disposition of the case which is herein affirmed.

CROCKETT, MAUGHAN and WILKINS, JJ., concur.

ELLETT, Chief Justice (dissenting):

The facts as set out in the main opinion convince me that there is a jury question as to whether the accused boy acted out of fear and in self defense. The judge found that because several minutes elapsed between the argument inside the building and the shooting that the accused had ample opportunity to exit the building, therefore, no self defense.

---

1. *State v. Molitz,* 40 Utah 443, 122 P. 86 (1912).

2. *State v. Romero,* Utah, 554 P.2d 216 (1976); *State v. Fort,* Utah, 572 P.2d 1387 (1977).

3. U.C.A., 1953, 76–8–502.

4. U.C.A., 1953, 78–3a–1.

That is not proper reasoning. The boy did exit the building and it was the victim armed with a cue stick and his buddy who ran the accused and his pal completely away from the building and into an area of construction. The first shot was into the ground—the second into the leg of the aggressor.

I think that the case should be remanded for the purpose of determining if in fact the lad shot in self defense. This is especially true since the accused and his companion were younger than the victim and his associate.