STATE of Utah, Plaintiff and Respondent,

v.

Charles F. CONRAD, Defendant and Appellant.

No. 15922.

Supreme Court of Utah.

Feb. 7, 1979.

---

Walter R. Ellett, Murray, for defendant and appellant.

Robert B. Hansen, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendant was charged with aggravated robbery, a first degree felony, in violation of Section 76–6–302,[1] and was tried before the Second District Court, sitting with a jury. The Court entered its judgment on the jury's verdict of guilty and from that judgment, and the Court's denial of his motion for a new trial, defendant appeals. Affirmed.

The evidence shows that Kim Reed was the sole attendant at a Buy-Rite self-service gas station in Ogden, Utah, on April 15, 1977. Reed testified that defendant approached him at approximately 7:45 that evening, pointed a small caliber pistol at him and ordered him to unlock the till. Reed did so, whereupon defendant took the money out of the till (later determined to have been $34.90) and ordered Reed to walk toward the carwash in back of the station, while defendant made his escape in the opposite direction. Reed further testified that as he walked toward the carwash, a small red car pulled out of the southwest carwash and drove up the street; that he particularly noticed the car because the southwest carwash had been blocked off by him one half hour earlier as the water hose had been cut. Reed described the car to the police and picked defendant's picture out of the police photos as the man with the gun who robbed him. He picked defendant's brother, Sonny, from policy photos as possibly being the driver of the car. Later he also picked a LeRoy Gutierrez from police photos as possibly being the driver of the car.

In contrast to the victim's testimony, defendant testified in his own defense that *he* had driven the small red car into the carwash, and had cut the hose in order to divert the attendant's attention while his accomplice LeRoy Gutierrez took the money out of the unlocked and unguarded till. Defendant contends that the pair did not use a gun or other deadly weapon, but admits that he did participate in a theft of $34.90, a class B misdemeanor under Section 76–6–412(1)(d).

Defendant explains the discrepancy between his version of the crime and that of the victim, by emphasizing the victim's testimony on cross examination, that his employer had lost money from the till due to the diversion of the attendant's attention in exactly this same manner three months previously, after which the employer had imposed a rule that the till should be locked at all times and the key carried with the attendant. Defendant asserts that the victim insists that he was robbed at gunpoint only because he was afraid of losing his job if his employer had known that he had violated this rule, and had left the till unlocked.

The jury chose not to believe the defendant's version and returned a verdict of guilty of "aggravated robbery," having selected that verdict over three other verdict forms given them, which included "robbery," "class B misdemeanor," and "not guilty."

Defendant initially filed a notice of alibi, and at the trial presented six witnesses, all of whom testified that they had seen him on the evening in question, but seemingly at different places, at or around the time of the incident. All of this testimony tended to confuse the issues at trial and to impeach the defendant's own testimony. Nevertheless, in all fairness to the defendant, taken as a whole, the testimony of these witnesses can be said to be consistent with the defendant's testimony if two suppositions are made, viz., (1) that defendant's visit to the Buy-Rite station took as little as ten or fifteen minutes, and (2) that none of the

---

1. All statutory references are to Utah Code Annotated, 1953, as amended.

alibi witnesses were aware of the exact time at which they saw defendant at some other place.

Prior to the trial defendant moved for a continuance on the ground that a material witness, LeRoy Gutierrez, was not available. The Court denied the motion but ruled that it would reconsider the motion if Gutierrez were apprehended. Some months after the trial, while this case was pending appeal, Gutierrez was arrested for his part in this crime, and, according to the record here, pled guilty to second degree felony theft. This case then was remanded for the purpose of consideration of defendant's motion for a new trial based on newly discovered evidence. After remand, Gutierrez filed an affidavit which corroborates defendant's version of the facts and defendant's contention that a gun was not used.

The Court denied defendant's motion for a new trial on the ground that the new evidence was totally inconsistent with the evidence defendant presented at trial, and that the testimony of this witness would not have made a difference in the outcome at trial. In making his ruling, it is apparent that the judge remembered only that defendant presented alibi testimony, and had not recalled defendant's own testimony.

Defendant's sole contention on appeal is that the District Court erred in this ruling, as Gutierrez' affidavit is consistent with defendant's testimony at the trial, and the evidence is material to the defense.[2]

█ The determination of whether to grant a new trial based on newly discovered evidence is within the sound discretion of the trial court,[3] and that court's determination will not be disturbed on appeal unless it has clearly abused its discretion. This Court has previously ruled that in order to constitute a ground for a new trial, newly discovered evidence must meet the following criteria:

2. Section 77–38–3(7).

3. *State v. Molitz*, 40 Utah 443, 122 P. 86 (1912); *State v. Jiron*, 27 Utah 2d 21, 492 P.2d 983 (1972).

. . . (1) It must be such as could not with reasonable diligence have been discovered and produced at the trial; (2) it must not be merely cumulative; (3) it must be such as to render a different result probable on the retrial of the case.[4]

█ It is *not* contested that the testimony of Gutierrez was not available prior to the trial. As far as the second test is concerned, it may be said that the testimony is not new evidence, but is cumulative, since this version of the facts was submitted to the jury in the form of the defendant's own testimony, which the jury rejected. We are not unmindful of the fact that Gutierrez' testimony might lend credence and support to defendant's story, and might have made a difference in the jury's verdict—were it not for the fact that Gutierrez' affidavit is in conflict with his own plea of guilty of second degree felony theft. Section 76–6–412(1)(a), provides:

(1) Theft of property and services as provided in this chapter shall be punishable as follows:

(a) As a felony of the second degree if:

(i) The value of the property or services exceeds $1,000; or

(ii) The property stolen is a firearm or an operable motor vehicle; or

(iii) The actor is armed with a deadly weapon at the time of the theft; or

(iv) The property is stolen from the person of another.

Inasmuch as this theft did not involve property having a value in excess of $1,000, nor was it a theft of either a firearm or an operable vehicle, Gutierrez, in pleading guilty to second degree felony theft, must have admitted either that he was armed with a deadly weapon, or that he took the money from the person of the victim—neither of which is consistent with the story to which he is now willing to testify. The facts as sworn to in the Gutierrez affidavit

4. *State v. Gellatly*, 22 Utah 2d 149, 449 P.2d 993 (1969). See also *State v. Jiron*, supra.

would sustain a conviction of a class B misdemeanor only; not a second degree felony.

In view of the fatal conflict in the proposed new evidence, we are not persuaded that there is a reasonable likelihood that the jury's verdict would have been different had this testimony been added to the already conflicting evidence presented by the defense.

Under these circumstances we find that the Court did not abuse its discretion in denying defendant's motion for a new trial.[5]

CROCKETT, C. J., and MAUGHAN, HALL, and STEWART, JJ., concur.

---

5. Though this Court does not adopt the District Court's statement that the affidavit was inconsistent with defendant's evidence, we perceive no fatal defect on this point which would require reversal.