**Darrell E. DIXON and Nada Dixon, Plaintiffs and Appellants,**

v.

**Kathy STEWART, Defendant and Respondent.**

No. 17307.

Supreme Court of Utah.

Dec. 30, 1982.

James R. Hasenyager, Ogden, for plaintiffs and appellants.

Gary B. Ferguson, Salt Lake City, for defendant and respondent.

DURHAM, Justice:

This is an appeal from a no cause of action judgment where the jury found the pedestrian (plaintiffs' decedent) 60% negligent and the driver of the car that hit and fatally injured him 40% negligent. The accident occurred at about 1:22 a.m. on January 1, 1979, in front of a house where a New Year's Eve party was going on. The posted speed limit along the street was 35 miles per hour. The plaintiffs' decedent, Dixon, who had been smoking marijuana, left the truck in which he had been sitting with a friend on the far side of the street away from the house and jaywalked across the street. About three feet from the curb, he faltered and was struck by the defendant, Kathy Stewart. She was traveling at approximately 40 miles per hour, had been drinking and, by the time she was tested, had a blood alcohol count of .09%. The defendant said that she saw Dixon crossing the street but when he faltered she was unable to avoid hitting him. On February 2, 1979, the defendant pled guilty to a criminal charge of "negligent homicide."

During this jury trial, the judge admitted the testimony of defendant's expert, a physician, who testified as to the general effects of marijuana usage. The admission of his testimony was based on evidence that the decedent had been smoking marijuana just prior to the accident. There was no evidence showing the exact amount of marijuana smoked by Dixon. The trial judge refused to permit the introduction into evidence of the defendant's plea of guilty to the criminal charge of negligent homicide. The court also refused to give three jury instructions requested by the plaintiffs, which are set forth hereafter. The plaintiffs claim error by the trial judge as follows:

1. Error in not instructing the jury as to the consequences of their apportionment of negligence between the parties.

2. Error in admitting the physician's testimony on the effects of marijuana usage.

3. Error in not giving a "last clear chance" instruction.

4. Error in not admitting the evidence of defendant's guilty plea in the criminal case.

5. Error in restricting the case to simple negligence.

### I.

Plaintiffs' first point, which asserts that the plaintiffs were entitled to a jury instruction informing the jury of the legal consequences of its apportionment of negligence, asks this Court to overrule its decision in *McGinn v. Utah Power & Light Co.,* Utah, 529 P.2d 423 (1974). In that opinion, this Court held that "it is prejudicial error if, in a comparative negligence case, the court instructs the jury as to the effect or impact its fact-finding answers, in a special verdict, will have on the outcome of the case." *Id.* at 424. A review of the context in which *McGinn* was decided demonstrates that it is now appropriate to reconsider that decision.

U.C.A., 1953, § 78–27–37 is Utah's comparative negligence statute permitting a negligent plaintiff to recover damages from a negligent defendant so long as the defendant's negligence is greater than the plaintiff's. U.C.A., 1953, § 78–27–38 provides that the court *must,* upon request of a party, direct the jury to find special verdicts determining (1) the total amount of damages suffered and (2) the percentage of negligence attributable to each party. After the jury returns its findings, the court must reduce the amount of damages in proportion to the amount of negligence found by the jury. The Utah Comparative Negligence Act, of which these two sections are a part, was enacted by the Utah legislature in March of 1973, and became effective as law in May of that year. It is nearly identical to the Idaho Comparative Negligence Act, enacted in Idaho in 1971. Like many other states, Idaho modeled its act after the Wisconsin Comparative Negligence Act.

Section 78–27–38, as noted above, makes special verdicts available at the request of a party. There is nothing in the language of the statute itself that suggests that the jury is to be kept in ignorance of § 78–27–37. Neither is there any indication in the language of either § 78–27–37 or § 78–27–38 of any legislative intent to make changes in trial procedure, or to restrict, alter or affect jury functions.

Nevertheless, the enactment of § 78–27–38 together with the *McGinn* decision limits the use of Rule 49 of the Utah Rules of Civil Procedure which makes special verdicts available at the discretion of the court. Rule 49(a) states that the court may require the jury to return only a special verdict and makes several suggestions as to the method of submission to the jury, concluding with the statement that the court "may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate." Subsection (b) provides that the court may submit to the jury both written interrogatories on one or more issues of fact and the appropriate forms for a general verdict. In considering the issue before us, it is

important to note the following statement found in Rule 49(a), and also found in similar language in Rule 49(b): "The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue." This rule clearly vests the trial court with broad discretion in the selection of the form of verdict and the method of submission to the jury. It is doubtful that the legislature, by the enactment of § 78–27–38, intended to strip the trial court of this discretion. Professor Thode, in a 1973 Utah Law Review article, argued that the trial court could retain its discretion and make use of either Rule 49(a) or (b) and still comply with the provisions of § 78–27–38.[1] However, if Rule 49(b), the general verdict with interrogatories, is available to the trial court and if it were used in comparative negligence actions, the law of comparative negligence and the consequences of the allocation of negligence to each party would have to be explained to the jury in order for the jury to return a general verdict.

It should be noted that there is nothing about the use of special verdicts per se that mandates keeping the jury in the dark about the effects of its findings. The issue of the "blindfolded jury" is part of a more general debate about the function of juries.[2] Commentators who view the jurors as ignorant and emotional anachronisms in modern courts are naturally in favor of a strict separation between the fact-finding function of the jury and the application of the law by the court. These commentators contend that the less information jurors

have about the law, the more likely they are to confine their deliberations to the finding of facts. Accordingly, the judge can then apply the law with informed accuracy to the impartial factual findings of the jury.

Commentators at the other end of the spectrum view special verdicts as something approaching unconstitutional attempts to pervert the jury system. This point of view considers the jury to be the hand of the community that tailors the strict rule of law to fit the individual case. Naturally, these commentators, when faced with the necessity of using special verdicts, argue that the jury should always be informed of the consequences of its findings. A third and more moderate point of view regards special verdicts and interrogatories as useful tools that assist jurors in making step-by-step findings in complex cases, rather than as methods by which the function of jurors may be restricted.[3] Modern studies, such as the University of Chicago's Jury Project,[4] as well as the experience of many trial judges and lawyers, indicate that jurors are concerned about the effects of their findings, and therefore, attempt to adjust their findings in order to bring about the result they desire. It was against this background of debate that this Court considered the case of *McGinn v. Utah Power & Light Co., supra,* in 1974.

In *McGinn,* the plaintiff received severe burns when the aluminum mast on a sailboat he was helping to carry came in contact with a hot wire on one of the defendant's transmission poles. The jury returned a special verdict concluding that the plain-

---

1. In his article, Thode, *Comparative Negligence, Contribution Among Tortfeasors, and the Effect of a Release—A Triple Play by the Utah Legislature,* 1973 Utah L.Rev. 406, Professor Thode suggests that "[t]he trial judge should be allowed to choose the special verdict or the general verdict with interrogatories because either method complies with the mandate of [§ 78–27–38]." *Id.* at 414.

2. *See generally* C. Wright, *Handbook on the Law of Federal Courts* § 94 at 463–67 (3d ed. 1976); Barton, *Utah Comparative Negligence Practice: Does Blindfolded Justice Demand Blindfolded Juries?,* 1979–80 Utah B.J. 25; Green, *Blindfolding the Jury,* 33 Tex.L.Rev. 273

(1955); Green & Smith, *Negligence Law, No-Fault and Jury Trial—I,* 50 Tex.L.Rev. 1093 (1972); Heft & Heft, *Utah and its New Comparative Negligence Act,* 1 Utah B.J. 35, 42 (May-June 1973); Comment, *McGinn v. Utah Power & Light Co.—Jury Blindfolding in Comparative Negligence Cases,* 1975 Utah L.Rev. 569.

3. A brief summary of all three approaches is contained in C. Wright, *Handbook on the Law of Federal Courts* § 94 at 463–67 (3d ed. 1976).

4. *See generally* H. Kalven, Jr. & H. Zeisel, The American Jury (1966).

tiff was 60% negligent and the defendant 40% negligent which, under the provisions of the law, precluded recovery by the plaintiff. After trial, the plaintiff interviewed the jurors and discovered that the jurors had concluded that the plaintiff deserved judgment in his favor but that he should have received only 40% of the damages he asked for. Based on this information, the plaintiff moved for a new trial. The trial court granted the plaintiffs' motion on the grounds that the court had failed to instruct the jury as to the results of their percentage findings and that the jurors were not sufficiently instructed as to the relationship or lack thereof between the percentage findings and the damages. The defendant, Utah Power & Light, appealed the order granting a new trial. On appeal, the Utah Supreme Court reversed and remanded, stating that "it is prejudicial error if, in a comparative negligence case, the court instructs the jury as to the effect or impact its fact-finding answers, in a special verdict, will have on the outcome of the case." 529 P.2d at 424.

In reaching its decision this Court cited six jurisdictions with similar comparative negligence law where there was a similar prohibition against informing the jury of the effects of its negligence allocation. Particular weight was given to the decision of the Supreme Court of Idaho in *Holland v. Peterson,* 95 Idaho 728, 518 P.2d 1190 (1974), a case decided shortly before *McGinn. McGinn* itself was decided under the provisions of Idaho's comparative negligence statute, because the parties had stipulated that Idaho law was controlling as the accident had taken place in Idaho. In *McGinn,* we acknowledged the use of Idaho

law, but declared that we would have reached the same decision under Utah law. However, the decision did not recognize or comment on the jury's confusion of the negligence and damage issues, nor did it recognize or comment on the fact that its holding precluded the trial court's use of Rule 49(b) in a comparative negligence case.

It is interesting to note that the *McGinn* court cited six cases in a footnote as cases which are "identical or near identical in their application."[5] This Court goes on to say that those authorities "reflect a principle we consider sound and correct, to the end that it is prejudicial error if, in a comparative negligence case, the court instructs the jury as to the effect or impact its fact-finding answers, in a special verdict, will have on the outcome of the case." 529 P.2d at 424. Of the six cases cited, only the Idaho and Colorado cases were decided in the context of a statutory system similar to Utah's. Furthermore, a review of the cases since *McGinn* demonstrates that *McGinn's* reliance on those cases from other jurisdictions is now inappropriate.

Since the *McGinn* decision in 1974, the rationale adopted there has become a minority, and almost a unique, position. In *Seppi v. Betty,* 99 Idaho 186, 579 P.2d 683 (1978), the Idaho Supreme Court overruled its previous decision. The Colorado opinion referred to in *McGinn* has been overruled by the enactment of a statute which permits the jury to be informed of the legal consequences of special verdict answers. *See* Colo.Rev.Stat. § 13–21–111(4) (1974 and Supp.1981). A similar statute prevails in Minnesota. *See* Minn.R.Civ.Pro. 49.01(2) (1980) referring to Minn.Stat. § 604.01

5. In *McGinn v. Utah Power & Light Co.,* Utah, 529 P.2d 423, 424 n. 2 (1974), this Court cited cases from the following jurisdictions: Arkansas, Colorado, Idaho, Minnesota, Tennessee and Wisconsin. At the time McGinn was written, Minnesota had not yet adopted a comparative negligence act. Arkansas had adopted a comparative negligence act, but the opinion cited makes no reference to comparative negligence cases in particular but states only that it is reversible error for a judge to instruct jurors as to the effect of their answers when a special verdict is used. The Wisconsin case was decid-

ed under a comparative negligence act, but the Wisconsin procedure differs in that far more extensive interrogatories are used so that a jury would be less likely to become confused between the issues of negligence and damages. Tennessee has never enacted a comparative negligence law but uses its own hybrid version of contributory negligence and proximate causation. The Tennessee decision referred to in *McGinn* is similar to the Arkansas decision in that it deals only with the use of special verdicts, making no mention of comparative negligence cases in particular.

(1980). Other comparative negligence jurisdictions, such as North Dakota and Wyoming have moved away from the "blindfolded jury" position by enacting statutes which allow the jury to be informed of the consequences of its decisions. *See* N.D. Cent.Code § 9–10–07 (1975); Wyo.Stat. § 1–1–109(b)(iii) (1977). The Supreme Courts of Kansas and Oklahoma brought about the same effect in *Thomas v. Board of Township Trustees,* 224 Kan. 539, 582 P.2d 271 (1978) and *Smith v. Gizzi,* Okl., 564 P.2d 1009 (1977).

One reason for these changes can be seen by a close review of the cases cited in *McGinn.* In nearly all of them the appellant had interviewed the jurors after the trial and had learned that the jury had confused the issues of negligence and damages and were disappointed at the unexpected legal consequences of their findings. *McGinn* states that the only reason for informing the jury of the consequences of its decisions is to evoke the sympathy and bias of the jury, implying that a jury not so informed would make its decisions without sympathy or bias. Instead, these cases indicate that the juror's lack of knowledge does not eliminate sympathy or bias. It simply insures that the jury makes its decision in greater ignorance. The Idaho court in *Seppi* eloquently discussed the effects of ignorance on the jury as follows:

> It would be incredibly naive to believe that jurors . . . will answer questions on a special verdict form without giving any thought to the effect those answers will have on the parties and to whether their answers will effectuate a result in accord with their own lay sense of justice . . . . In those instances where the legal effect of their answers is not so obvious, the jurors will nonetheless speculate, often incorrectly, and thus subvert the whole judicial process.
> . . . .
> . . . [W]hether the plaintiff recovers may depend as much upon how "courtwise" the members of the jury are as upon how the jurors view the facts. In short, not informing the jury . . . is likely to cause an unjust result and produce a judgment which does not reflect the wisdom of the jury or their view of the facts, but only their ignorance of Idaho law.

*Id.* 99 Idaho at 193–94, 579 P.2d at 690–91.

Our determination that the policy reasons for the *McGinn* decision no longer exist does not create any tension with §§ 78–27–37 and –38 of Utah's Comparative Negligence Act. There is no indication in those sections of a legislative intent to keep juries in the dark as to the effect of their findings. In fact, in 1975 the legislature passed a bill overturning *McGinn* and requiring the jury to be informed, but the bill was vetoed by the Governor.

■ This case presents facts which illustrate the problems associated with the withholding of information from the jury and its effect on their determinations. The evidence demonstrates negligence on the part of both parties. The verdict form shows that the jury foreman originally entered the 40%–60% split in the opposite order, that is, he showed the plaintiff as 40% negligent and the defendant as 60% negligent. Subsequently, a line was drawn through those two figures and they were reversed. In addition, the amount entered as damages was very much reduced from the amount prayed for by the plaintiffs, indicating a likelihod that the jurors thought they were awarding the plaintiffs an amount reduced by the percent of their decedent's negligence. There seems to be no good reason in logic or current law for this Court to give its sanction to the perpetuation of such confusion. Consequently, we overrule the decision in *McGinn,* and hold that if requested, a trial court must inform the jury of the effect of apportioning to the plaintiff 50% or more of the negligence it finds in a comparative negligence case, if the effect of such an instruction will not be to confuse or mislead the jury. The trial courts should be given some discretion to exclude such an instruction in the unusual or complex case where it would lead to confusion or improper jury deliberations. However, in the usual case, including the

instant case, such an instruction would be proper. If such an instruction is given, it would also be proper to instruct the jury to determine total damage figures only, and not to reduce that sum to reflect their findings on negligence allocation.

In basing this decision on our belief that jurors can function properly and intelligently with full disclosure of relevant law in comparative negligence cases, we agree with the cautionary approach taken by the Idaho Supreme Court in *Seppi, supra,* when it said:

> We emphasize that our decision today does not authorize juries to totally disregard the law and to decide cases according to their own particular whims. Rather, we stress, as we have earlier in this opinion, that *the trial court has broad discretion to order a new trial when it believes that the verdict,* whether general or special, *is a product of the jury's misunderstanding, prejudice or bias,* or *that the jury has failed to properly follow its instructions. This is a much more effective way to control the problems of misunderstanding and bias in jury verdicts than attempting to blindfold the jury.* Moreover, we note that Idaho comparative negligence law is premised on the proposition that a plaintiff whose damages are as much the result of its own negligence as that of the defendant ought not to recover, but the parties should bear their own losses. The rule is based on a sound *common-sense proposition which we do not believe will be lightly disregarded by juries in this state once it is properly explained to them.*

*Id.* at 195, 579 P.2d at 692 (emphasis added).

## II.

The plaintiffs' second point on appeal claims error in the trial court's admission of expert medical testimony regarding the effects of marijuana. The plaintiffs raise two issues in support of this claim. First, the plaintiffs claim that there was no "foundational basis" for the testimony because there was no evidence as to how much marijuana Dixon had actually smoked. According to the testimony of the defendant's medical expert, marijuana, like alcohol, is dose related. Although the plaintiffs refer to Dixon's marijuana usage as "alleged marijuana usage," there was reliable evidence to the effect that he had smoked some number of marijuana cigarettes. The plaintiffs argue that because there is no evidence to establish exactly how much marijuana Dixon used, no logical inference can be drawn that he was actually under the influence of marijuana at the time of the accident. Second, the plaintiffs claim that the admission of the expert's testimony was improper because of its highly prejudicial nature which, the plaintiffs assert, outweighed the minimal probative value of the testimony.

In general, expert testimony is admissible when (1) it appears that the matter before the jury is not within the knowledge of the average layman or concerns a subject not within average experience, and (2) the testimony is such that it will be an aid to the jurors regarding the issues before them. Whether or not these two criteria are met is a matter to be determined by the trial court, which is given considerable discretion. On the other hand, the weight to be given that testimony is a matter for the jury. No matter how arcane the subject matter or how erudite the witness, the jury is not required to accept the expert's testimony as conclusive. The jurors may give such testimony any weight they choose, including no weight at all.

In this case, the plaintiffs made no objection to the qualifications of the expert witness. Although it is generally held that expert testimony is not required in the case of intoxication with alcohol, some jurisdictions have specially held that a more trained or experienced observer is necessary to testify as to the intoxicating effects of drugs. There is no Utah case which squarely addresses this point. However, in *State v. Fort,* Utah, 572 P.2d 1387 (1977), this Court held that the trial judge has "considerable latitude of discretion in determining the qualifications of a witness," regarding the qualifications of a po-

lice officer to testify about the use of heroin. *Id.* at 1389 (citations omitted). The respondent cites *Marsh v. Irvine,* 22 Utah 2d 154, 449 P.2d 996 (1969), in which this Court stated that when "the determination of an issue will be aided by knowledge of something that is not generally known by laymen, it is in order to permit one who has specialized knowledge on the subject, and thus may properly be called an expert, to testify concerning his knowledge and/or his opinion to provide better understanding of the situation." *Id.* 22 Utah 2d 154, 449 P.2d at 999 (citation omitted). The expert's testimony in the present case can be said to have aided the jury in better understanding the situation which existed at the time of the accident. Certainly, the facts that Dixon walked out into the street in front of an oncoming truck and that he faltered while in that perilous position do not alone warrant the introduction of expert testimony regarding the general effects of marijuana usage. However, those facts in light of the undisputed evidence that Dixon had used marijuana within minutes of the accident make reasonable the trial court's admission of testimony regarding the physiological and psychological effects of marijuana use. In *Lamb v. Bangart,* Utah, 525 P.2d 602 (1974), this Court held that "[t]he trial court is allowed considerable latitude of discretion in the admissibility of expert testimony, and in the absence of a clear showing of abuse, this court will not reverse." *Id.* at 607–08. The plaintiffs are probably correct in asserting that the expert testimony was prejudicial to their cause. However, the testimony also had probative value which the trial court concluded outweighed the prejudicial effect. This decision is a proper exercise of the trial court's discretion and is not a basis for finding error in the trial court's ruling. The trial court's admission of the testimony is affirmed.

### III

The plaintiffs' third point asserts that they were entitled to a jury instruction on the last clear chance doctrine as an element of proximate causation. There is no statute or case which indicates that a party has a right to this instruction under any circumstance. The question arises because of the enactment of the Comparative Negligence Act, which included in § 78–27–37 the following: "As used in this act, 'contributory negligence' includes 'assumption of the risk.'" It is widely recognized that such doctrines as assumption of risk, last clear chance, and discovered peril resemble the old contributory negligence doctrine in that they are "all or nothing" doctrines in terms of recovery by the plaintiff. It makes no sense to abolish one of those doctrine, *i.e.,* assumption of risk, while retaining the others as distinct tort doctrines. This Court has made no definite declaration as to the status of the last clear chance doctrine in Utah since the passage of the Comparative Negligence Act, perhaps because, as the case law indicates, there has been scanty use of that doctrine by litigants.

█ The plaintiffs refer to six states which have recognized that the doctrine of last clear chance is unaffected by the adoption of comparative negligence acts. They do not mention that there are at least seven jurisdictions which have formally abolished last clear chance as a doctrine.[6] The plaintiffs also argue for the retention of the last clear chance doctrine as a rule of proximate cause, but we find this argument unpersuasive. There seem to be no good reasons to retain a doctrine which was originally devised because of another doctrine, *i.e.,* contributory negligence, which the state of Utah has statutorily abolished as an absolute bar to recovery. We therefore hold that the doctrine of last clear chance as a distinct tort doctrine was extinguished along with contributory negligence and affirm the trial court's refusal to give the "last clear chance" instruction.[7]

6. *See* Annot., 78 A.L.R.3d 339, § 15(b) at 387 (1977 & Supp.1981).

7. Our decision here does not preclude argument to the jury as to whether a party may or may not have had the "last clear chance" to avoid injury. However, the old "all or nothing"

## IV

The plaintiffs' fourth point states: "A plea of guilty to negligent homicide should have been admitted at trial as an admission against interest by Kathy Stewart." This point raises two questions: (a) the admissibility of a guilty plea to a criminal violation involving the same circumstances, and (b) the treatment which should be afforded the plea if admissible.

Utah has no statute or rule of evidence forbidding the use of a guilty plea in a subsequent civil case. The defendant argues for the application of U.C.A., 1953, § 41–6–170 which provides that "[n]o record of the conviction of any person for any violation of this act shall be admissible as evidence in any court in any civil action." The defendant argues that "this statute is clear and controlling," apparently on the basis that U.C.A., 1953, § 76–5–206, the negligent homicide statute in the Criminal Code to which the defendant entered a plea of guilty, is somehow equivalent to U.C.A., 1953, § 41–6–43.10, which is the negligent homicide statute in the Traffic Rules and Regulations Act. However, these statutes, although containing the same penalties, do not have identical wording. In addition, there is no indication that the legislature, in enacting § 41–6–170, had any intent to prohibit the use of criminal convictions or guilty pleas in subsequent civil cases. Rather, such statutory provisions are usually intended to prevent use of the mere fact that a party has paid a traffic ticket as a "conviction" in a subsequent civil action. In addition, the defendant also urges the application of *Utah Farm Bureau Insurance Company v. Chugg,* 6 Utah 2d 399, 315 P.2d 277 (1957), where this Court wrote as follows:

> Appellant also contends that the court erred in admitting in evidence as an admission against interest a plea of guilty to drunken driving by Chugg in a criminal proceeding arising out of the accident involved herein because Sec. 41–6–170, U.C.A. 1953, provides that:

>> "No record of the conviction of any person for any violation of this act shall be admissible as evidence in any court in any civil action." (Uniform Act Regulating Traffic on Highway.)

> We agree. The above quoted statute clearly prohibits the admission in evidence of a record of conviction of a violation of the Uniform Act Regulating Traffic on Highways. A plea of guilty is as much a conviction as a verdict and judgment to that effect and therefore under the provisions of this statute should not have been admitted in evidence.

*Id.* at 404, 315 P.2d at 279–80. This case is distinguishable from the instant case in that the provisions regarding drunken driving are found in the Traffic Rules and Regulations, whereas here the defendant pled guilty to a charge under the criminal code. It may be noted as well that § 41–6–170 was enacted by the legislature in 1941, whereas § 41–6–43.10, the negligent homicide statute under Traffic Rules and Regulations, was enacted in 1953.

The trial court ruled that evidence of the defendant's guilty plea was inadmissible on the grounds that its probative value was outweighed by the risk that its admission would necessitate undue consumption of time and tend to confuse the issue. Rule 45 of the Utah Rules of Evidence, "Discretion of Judge to Exclude Admissible Evidence," provides that a trial judge may "in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) fairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

In *Terry v. Zions Cooperative Mercantile Institution,* Utah, 605 P.2d 314 (1979), this Court held that "[w]hen the trial judge

---

doctrine is now subsumed within comparative negligence and, as bearing on which party was guilty of the greater negligence, "last clear chance" becomes just one of many factors to be weighed in the comparison by the finder of fact.

weighs the matter and makes the determination, his ruling should be looked upon with indulgence and not disturbed unless it clearly appears that he abused his discretion." *Id.* at 323. This case also dealt with the admissibility of evidence of a prior guilty plea. However, *Terry* was a civil action for malicious prosecution in which the defendant wanted to introduce evidence of the plaintiff's prior guilty plea to a charge of shoplifting as affecting the issue of damages. At trial the court admitted the guilty plea, but restricted the evidence to the mere fact of the prior act and the identity of the party. Although the prior incident and surrounding. circumstances were undoubtedly probative, this Court held on appeal that the trial court was correct in considering the delay and confusion that would have resulted from the admission of the substantive facts of the prior case. The court commented that due to the plaintiff's guilty plea in the prior matter and the lack of a trial on the merits, the many disputed issues in that previous case would have been tried for the first time in the present proceeding had all the circumstances been admitted. This Court held that the trial judge acted correctly under Rule 45 of the Utah Rules of Evidence in restricting the evidence, and that there was no abuse of discretion. *See Terry, supra,* and cited cases.

We hold, on the facts of this case, however, that there was an abuse of discretion when the defendant's guilty plea was excluded. *Terry* is distinguishable in that the defendant there wanted all the circumstances of the prior case admitted, which circumstances were not identical with the case at trial and did not involve the same facts. However, due to the restricted evidence which the court did allow, the plaintiffs could not deny the existence of the prior incident. In this case, the plaintiffs wished only to have the defendant's guilty plea admitted as a declaration against interest, because the defendant had denied all responsibility for the fatal accident in her pleadings. She was able to continue to deny responsibility throughout the trial without contradiction in spite of her previous guilty plea because all evidence regarding that plea was excluded. Equally important are the facts and circumstances surrounding the negligent homicide charge which were identical to the facts in this case. No substantial time or confusion would have been added to the trial by reason of the admission of the guilty plea.

In summary, we are persuaded that the plea should have been admitted. This is a comparative negligence case and, by its very nature, the evidence is cumulative. The jury must perform a weighing function in order to allocate percentages of negligence. We acknowledge that there are many reasons why an individual might plead guilty to a criminal charge, many of which, such as lack of financial ability or lack of desire to contest the charge, cannot be construed to be an admission of actual guilt. However, if such reasons exist for a guilty plea, evidence and arguments respecting them may be placed before the jury.

The second question raised by plaintiff's fourth point is the question of how this guilty plea is to be weighed. The plaintiffs cite *Intermountain Farmers Association v. Fitzgerald,* Utah, 574 P.2d 1162 (1978), where this Court held that: "violation of a statute does not necessarily constitute negligence per se and may be considered only as evidence of negligence .…" *Id.* at 1164. In that case, prejudicial error was found where the jury instructions stated that a violation of the statute constituted negligence per se as a matter of law. This Court quoted from a previous case, *Thompson v. Ford Motor Company,* 16 Utah 2d 30, 395 P.2d 62 (1964), where this Court held that a violation of a safety standard set by statute may be regarded as prima facie evidence of negligence, subject to justification or excuse. Although the provisions of the negligent homicide statute scarcely seem to qualify as a "safety standard," the same principle should apply, namely, that criminal culpability generally constitutes only evidence of negligence in a civil action, rather than negligence per se as

a matter of law. We hold that the trial court erred in refusing to admit evidence of the defendant's guilty plea, but that the guilty plea does not constitute negligence per se.

## V

The plaintiffs' last point asserts that "under comparative negligence plaintiffs were entitled to present the strongest case of overall negligence against defendant as was possible rather than be limited to a case of simple negligence." The plaintiffs argue that they were entitled to prove the best case of negligence possible and that it was reversible error for the court to refuse to instruct the jury that it is unlawful in the state of Utah for a person with a blood alcohol content of .10% or greater to drive or be in actual physical control of any vehicle, and that to drive or be in physical control of a motor vehicle in this condition is evidence of negligence. Instruction 12, given by the trial court, stated that a person who drives with a .08% or more by weight of alcohol in his blood, is presumed to be under the influence of intoxicating liquor, and is guilty of negligence as a matter of law. The instruction further stated: "To be under the influence of alcohol means that one's ability of perception, coordination or judgment are so affected as to impair one's ability to operate a motor vehicle with the degree of care which an ordinary prudent person in full possession of his faculties would exercise under similar circumstances." Instruction 18 stated that a "[v]iolation of a requirement of the Traffic Rules is sufficient evidence of negligence to place upon the party failing to comply, the burden of justifying or excusing his conduct by evidence from which it can be found that his conduct was within the standard of reasonable care under all the circumstances."

Our search through the plaintiffs' brief and the record has failed to disclose any basis for claiming that the defendant had a .10% or more blood alcohol level. Thus, the requested instruction seems irrelevant or at least superfluous. In any event, in view of the above instruction, it seems doubtful that the denial of the requested instruction was prejudicial.

In conclusion, we have overruled *McGinn* and held that the trial court should inform the jury of the effect of apportioning 50% or more of the negligence to the plaintiff. We have also held that the trial court erred in excluding the defendant's guilty plea to the criminal homicide charge. Therefore, we reverse and remand this case for a new trial. No costs awarded.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.